CHARLES BELLONI, Appellant, *v.* JAMES F. FREEBORN, Jr., et al., Respondents.

In construing the obligation of sureties the same rules are applicable as in the construction of other instruments.

While the obligation cannot be extended by construction or implication beyond its precise terms, the meaning is to be ascertained in the same manner as in other instruments, and when thus ascertained effect is to be given to it.

A lease which recited that it was made between M., as landlord, and W.

H. B. (one of the defendants), and C. B. (plaintiff), composing the firm of W. H. B. & Co., as tenants, was executed by the landlord and by W. H. B. in said firm name and in his own name. The lease was for one year, from May 1, 1872. Plaintiff was not at that time or thereafter a member of said firm. Plaintiff signed the lease May 30, 1872, induced thereto by and in consideration of the delivery to him of a bond executed by defendants, conditioned that W. H. B. should pay the rent, and to hold plaintiff "harmless from any and every liability for or on account of rent of the said premises for the year commencing May 1, 1872, and ending May 1, 1873." W. H. B. paid the first quarter's rent but failed to pay the residue. In an action upon the bond, *held,* that the circumstances under which the bond was given were properly given in evidence to aid, if needed, in the interpretation of the instrument; that the liability referred to in the bond was the liability incurred simultaneously with its delivery (*i. e.,* for the year's rent), not simply a liability then existing; and that plaintiff's right of recovery was not limited to the actual damages sustained by him, but, as the bond was conditioned as well to pay the rent as to indemnify, that he was entitled to recover the whole amount of unpaid rent, although he had paid nothing thereon.

Also, *held,* that evidence of a secret understanding between W. H. B. and the other defendants, not communicated to plaintiff, to the effect that the bond was executed to indemnify plaintiff from any liability upon the lease as executed by W. H. B., was properly excluded.

Possession of a bond of indemnity by the principal is evidence of authority to deliver and authorizes the obligee to act upon it as valid and effectual for all it purports to be; and any qualification of the apparent liability, not made known to the obligee before he receives and acts upon the bond, cannot affect him.

(Argued October 7, 1875; decided December 14, 1875.)

APPEAL from order of the General Term of the Court of Common Pleas for the city and county of New York, reversing a judgment in favor of plaintiff entered upon the report of a referee.

This action was brought upon a bond which contained no recitals. The condition therein was as follows:

"The condition of the above obligation is such, that if the said William H. Bucknam shall fully pay and satisfy all claims or demands of Edward Matthews for the rent of room No. 6, and the basement of No. 57 Broadway, in the city of New York, and shall hold the said Charles Belloni harmless from any and every liability for or on account of the rent of the

said premises for the year commencing May 1, 1872, and ending May 1, 1873, then the above obligation to be void, otherwise to remain in full force and effect." The bond was dated May 30, 1872.

It appeared that in January, 1872, defendant William H. Bucknam leased of Edward Matthews the premises mentioned in the bond. A written lease was executed, which stated that it was made "between Edward Matthews of the city of New York, as landlord, and William H. Bucknam and Charles Belloni, jointly and severally composing the firm of William H. Bucknam & Co., as tenants." It was for one year, from May 1, 1872. Bucknam signed the lease in his own name and in said firm name. Plaintiff was not at the time, or at any time thereafter, a member of said firm. Plaintiff was allowed to prove, under objection and exception, that he was requested by Bucknam to sign the lease, but refused to do so without being secured, whereupon Bucknam presented to him the bond in suit, and in consideration thereof he signed the lease. Belloni paid the first quarter's rent, falling due August 1, 1872, but failed to pay the residue as it fell due.

At the close of plaintiff's evidence, defendants' counsel moved to dismiss the complaint as to all the defendants save Bucknam, on the ground that the bond simply indemnified against liability existing at the date of its execution, at which time no liability on the part of plaintiff existed. The motion was denied, and said counsel duly excepted.

Defendants' counsel offered to prove that the defendants other than Bucknam executed the bond upon the strength of representations made to them by Bucknam that it was desired to protect plaintiff against any liability then outstanding. The evidence was excluded and defendants' counsel duly excepted. The referee directed judgment for the amount unpaid upon the lease, and judgment was entered accordingly.

*William Q. Judge* for the appellant. Plaintiff was not obliged to show special damage. (*Churchill* v. *Hunt*, 3 Den.,

321; *Farnsworth* v. *Clark*, 44 Barb., 602; *Rockfeller* v. *Donelly*, 8 Cow., 623; *Wright* v. *Whiting*, 40 Barb., 235; *Jarvis* v. *Sewall*, id., 449; *Post* v. *Jackson*, 17 J. R., 239; *Gilbert* v. *Wiman*, 1 N. Y., 553.) If the undertaking was delivered before the execution of the lease it is valid as an indemnity for a future indebtedness for the term specified in it. If delivered after the liability had commenced, it was valid under the statute of frauds. (*McKenzie* v. *Farrell*, 4 Bosw., 192; *Gates* v. *McKee*, 13 N. Y., 232; *Scott* v. *Duncombe*, 49 Barb., 73.) A surety on a bond is presumed to know the nature of the obligation and the construction of the bond must be taken most strongly against the guarantor. (*Crist* v. *Burlingame*, 62 Barb., 351; *Gates* v. *McKee*, 13 N. Y., 232; *Walrath* v. *Thompson*, 4 Hill, 200; *Scott* v. *Duncombe*, 49 Barb., 73.)

*William Henry Arnoux* for the respondents. The condition of a bond being for the obligors' benefit, is construed most strongly in their favor. (Hurstone on Bonds, 31; *Ld. Arlington* v. *Merrick*, 2 Wms. Notes to S. R., 813; 1 Shep. Touch., 375; *Nicholson* v. *Paget*, 1 Cr. & M., 48; *Thompson* v. *Ray*, 46 Ala., 224; *Law* v. *East India Co.*, 4 Ves., 824; *Ludlow* v. *Simond*, 2 Cai. Cas., 1; *Walsh* v. *Baille*, 10 J. R., 180; *Penoyer* v. *Watson*, 16 id., 100; *Hamilton* v. *Van Rensselaer*, 43 N. Y., 244; *Melick* v. *Knox*, 44 id., 676; *Myers* v. *Edge*, 7 T. R., 254; *Litchfield Union* v. *Green*, 1 H. & N., 884.) The obligation of the bond cannot be construed to relate to future transactions. (*Pearsall* v. *Sumnerset*, 4 Taunt., 593; *Wright* v. *Russell*, 3 Wils., 530; *Smith* v. *Coe*, 55 N. Y., 678; *South Carolina* v. *Johnson*, 1 McC., 41; *Peppin* v. *Cooper*, 2 B. & Al., 431; *Warden of, etc.*, v. *Bostock*, 2 N. R., 175.) After the execution of the bond the liabilities of the sureties could not be increased by any act of the obligee not provided for in the bond. (*U. S.* v. *Kirkpatrick*, 9 Wheat., 721; *Brown* v. *Lattimore*, 17 Cal., 93; *N. W. R. Co.* v. *Whinray*, 10 Ex., 77; *Weston* v. *Barton*, 4 Taunt., 673; *Bellairs* v. *Ebsworth*, 3 Camp., 53.) The lease

having been executed by Belloni, after Bucknam's term had commenced, it was of no value to Bucknam. (Puff. Rules, quoted in Potter's Dwar., 132.) Plaintiff, if entitled to recover, could only recover nominal damages. (*Lyon* v. *Clark*, 8 N. Y., 148; *Gilbert* v. *Wiman*, 1 id., 553; *White* v. *Sealey*, 1 Dugl., 49.) In construing the bond it was proper to show all the surrounding circumstances, the pre-existing relation of the parties, the facts and the knowledge each had of those facts. (*Griffiths* v. *Hardenberg*, 41 N. Y., 464, 468; *Blossom* v. *Griffin*, 13 id., 569, 574; *In re N. Y. C. R. R. Co.*, 49 id., 414, 419; *Barney* v. *Worthington*, 37 id., 115; *Mayor*, etc., v. *Ex. Ins. Co.*, 3 Keyes, 439; 2 Pars. on Con. [6th ed.], 498; *Owen* v. *Homan*, 4 H. O. L., 997; *Squire* v. *Whitton*, 1 id., 333; *Hutchins* v. *Hebbard*, 34 N. Y., 26; *Truscott* v. *King*, 6 id., 147, 161; *Chester* v. *Bk. of Kingston*, 16 id., 336–343; *Agawan Bk.* v. *Strever*, 18 id., 502; *French* v. *Carhart*, 1 id., 96, 102; 3 id., 512; 1 Pars. on Con., 42, 43, note *b*; *Stringham* v. *St. N. Ins. Co.*, 4 Abb. Ct. App. Dec.; S. C., 5 Abb. Pr. [N. S.], 80.) If the bond was delivered by Bucknam to plaintiff for the purpose named, it was diverted from the purpose for which it was made and was invalid. (*Carver* v. *Wilson*, 14 Abb. Pr. [N. S.], 374.)

ALLEN, J. The undertaking of the defendants was as sureties for one Bucknam; and the right of the plaintiff to recover at all is challenged upon the ground that upon the only interpretation of the condition of the obligation allowable, as against sureties liable only *strictissimi juris*, no liability attached. The claim is that the bond is to pay the rent mentioned and indemnify the obligee only as against a liability therefor, already incurred by him and existing at the time of the execution of the instrument.

There is no rule exclusively applicable to instruments of suretyship and requiring them to be in all cases interpreted with stringency and critical acumen in favor of the surety and against the creditor, and all ambiguities to be resolved to the advantage of the promissor, and every liability exclu-

ded from the operation of the instrument that can by a strained and refined construction be deemed outside of the agreement. In guarantees, letters of credit, and other obligations of sureties, the terms used and the language employed are to have a reasonable interpretation, according to the intent of the parties as disclosed by the instrument, read in the light of the surrounding circumstances and the purposes for which it was made. If the terms are ambiguous the ambiguity may be explained by reference to the circumstances surrounding the parties, and by such aids as are allowable in other cases; and, if an ambiguity still remains, I know of no reason why the same rule which holds in regard to other instruments should not apply; and if the surety has left any thing ambiguous in his expressions, the ambiguity be taken most strongly against him. This, certainly, should be the rule to the extent that the creditor has in good faith acted upon and given credit to the supposed intent of the surety. He is not liable on an implied engagement, and his obligation cannot be extended, by construction or implication, beyond the precise terms of the instrument by which he has become surety. But in such instruments the meaning of written language is to be ascertained in the same manner and by the same rules as in other instruments; and when the meaning is ascertained effect is to be given to it. (*Gates* v. *McKee*, 3 Kern., 232; *Poppenhusen* v. *Seeley*, 3 Keyes, 150; *Hamilton* v. *Van Rensselaer*, 43 N. Y., 244; *Melick* v. *Knox*, 44 id., 677; *Agawam Bank* v. *Strever*, 18 id., 502.)

The condition of the bond is not necessarily confined to a liability of the obligor already incurred, to the exclusion of a liability to be assumed thereafter. There is no recital to limit the general terms of the condition; and no reference is made to the nature of the liability or the form in which it has been or may be incurred, or the date of its inception. The terms are entirely consistent with the intent to indemnify against a liability to be incurred upon the faith of the indemnity; and it having been received by the obligee as a security against and a consideration for becoming surety, it

should have that interpretation, as between the parties, which will make it effectual. (*Agawam Bank* v. *Strever, supra.*) The subject-matter of the indemnity was the rent of the premises named for the term specified. That was the substance of the agreement; and the time, form, manner or means at, in or by which a liability had been or should be incurred by the obligor, was not of the essence of the agreement. The debt assumed was clearly specified, and the language referring to the obligation of the obligee was sufficiently comprehensive to embrace a liability in any form, whether existing or subsequently incurred. The giving of the bond was in fact the inducement to and the consideration of the signing of the lease by the obligee; and the circumstances under which the bond was given were properly in evidence to aid in the interpretation of the instrument, if the words were not so plain as to obviate the necessity of such aid. The condition of the obligation is absolute for the payment of the rent by Bucknam, and that condition has been broken; and the law would presume, from the giving of the bond, an interest in the obligee in the rent, to sustain an action on the bond. The further condition to indemnify, etc., discloses the intent; and the most reasonable interpretation is to regard the liability referred to as one to be incurred thereafter, or, as was the fact, incurred simultaneously with the delivery of the bond, as there would be no consideration to support the instrument as an indemnity against a liability already incurred.

The referee properly excluded evidence of the secret understanding between the defendants and Bucknam, not communicated to or known by the obligee, to limit the effect of the instrument if its legal effect could qualify its terms by any agreement or understanding by parol. The possession of the bond by the principal was evidence of authority to deliver it, and to authorize the obligee to act upon it as valid and effectual for all it purported to be. Any parol or other qualification of the liability imputed by the body of the instrument, not made known to the party for whose protec-

tion it was designed, could not affect him, and could not be proved against him. There was no claim that the bond was not rightfully delivered to the obligee; and the liability then assumed has not been enlarged or increased by any act of the obligee. The rent is precisely that guaranteed by the defendant; and the delivery of the bond, under the circumstances, was authority for the obligee to sign the lease then awaiting his signature, and which he had refused to sign without security, relying upon the indemnity so aptly secured by the condition of the bond.

The only other question is as to the rule of damages. Had this bond been conditioned solely to indemnify and save harmless from damages, by reason of the liability, the obligee, the recovery would necessarily have been limited to the actual damages sustained by him. He could only have recovered to the amount of actual damnification. (*Gilbert* v. *Wiman,* 1 Comst., 550.) When the bond is, as in this case, conditioned as well to pay the debt or sum specified as to indemnify and save harmless the obligee against his liability to pay the same, the obligee may recover the entire debt or demand upon default in the payment, without having paid any thing. (*Churchill* v. *Hunt,* 3 Denio, 321; *Rockfeller* v. *Donelly,* 8 Cow., 623; *Wright* v. *Whiting,* 40 Barb., 235; *Jarvis* v. *Sewell,* id., 449; *Port* v. *Jackson,* 17 J. R., 239; S. C., id., 479; see also cases cited by Judge PRATT in *Gilbert* v. *Wiman, supra.*)

*Non damnificatus* would have been no answer to the present action.

We find no error in the judgment of the referee, and the order of the court reversing the judgment and granting a new trial must be reversed, and the judgment of the referee affirmed.

All concur; EARL, J., not sitting.

Order reversed, and judgment accordingly.