Dickman, J.
The contract of September 13, 1876, between Rutherford & Co. — the plaintiffs in error — and the railroad company, provided, that on the first day of each month during the progress of the work of constructing the road, the engineer should make -an estimate of all work done and material delivered during the preceding month, and that, on or before the fifteenth day of each month, eighty-five per cent, of the value of such estimate,' at the agreed prices, should be paid to the plaintiffs, by the treasurer or other disbursing agent of the railroad company. There was also a provision, that when all the work embraced in the contract was completed, a final estimate should be made according to the terms of the contract, and the balance appearing due the plaintiffs in error, should be paid to them upon their giving a release, under seal, to the company. The defendants in error, as guarantors of the railroad company, upon good and sufficient consideration, guaranteed, in writing, the payment of the monthly estimates provided for in the contract.
It is contended, however, that they were discharged from their liability as, guarantors, by reason of the railroad company having granted to Rutherford & Co., through its board of directors, an extension of time for the completion of the road, from the first to the twentieth day of September, 1877. The guarantors would doubtless be discharged if the company granted the extension without their assent. But if such assent was given, the liability would still continue. The assent i may be sigui *624 fietl in writing, or it may be given by parol, or it may be manifested by the conduct of the guarantors. And whether they gave their consent at the time the extension was granted, or subsequently, with a full knowledge of the facts, ratified and approved of it, they would remain bound for the performance of their agreement. Woodcock v. Oxford Worcester R. W. Co., 1 Dreury (Eng. Ch.), 521; Adams v. Way, 32 Conn., 172; Gardner v. Harback, 21 Ills., 129; Knoebel v. Kircher, 33 Ills., 308; Pelton v. Prescott, 13 Iowa, 567; Rindskopf Bros. v. Doman, 28 Ohio St., 516.
In determining the question of the liability of the defendants in the light of adjudged cases, the governing principle applies alike to sureties and guarantors. While the words surety and guarantor are often used indiscriminately as synonymous terms, there are points of difference between them. But the rule with reference to the discharge of a surety by the giving of time, is equally applicable to the guarantor of a debt of another. Campbell v. Baker, 46 Pa. St., 243. “ That a guarantor and an ordinary surety are alike affected by such extension of the time of payment, seems to be required by sound principles of law, and has often been held.” Dewey J., in Chace v. Brooks, 5 Cush., 43.
As a surety or guarantor is one who becomes responsible for the debt, default, or miscarriage of another person, it is urged, that to hold the defendants liable for the work and material done and furnished during the period of extension, would be to permit a recovery upon an oral variation of a contract, required by the Statute of Frauds to be in writing. If the contract of the railroad company was varied by the agreement to extend the time of completing the road, it was the variation of a contract not coming within the operation of the Statute of Frauds, and one which might be subsequently modified, without discharging the contracting parties. But the agreement for an extension of time did not vary, alter, or modify the guar *625 anty, or incorporate with it any new provision. Its effect, however, was to destroy the binding force of the guaranty, and to release the guarantors from their obligation, unless they assented to the extension, and thereby Avaived their right to be discharged. Having assented, — Avhether by writing, or parol, or by their own acts, —■ and thereby induced the plaintiffs to adopt and pursue a line of conduct which they otherwise would not have pursued, the doctrine of estoppel Avould properly apply to the guarantors, claiming a release to the manifest injury of those whose conduct they had thus influenced.
We have examined all the testimony embraced in the record of this case, and we are satisfied that the defendants gave their consent to the extension of time granted by the railroad company to the plaintiffs. They were all members of the board of directors, at the time of executing their guaranty. With one exception, they were all present at the meeting on August 1st, when the board, consisting of nine members, agreed to the extension of time; and with perhaps tvro exceptions, they were all present at the meeting on the 8th of August, when the granting of the extension Avas ordered to be endorsed on the agreement of the guarantors. As directors, they ordered that their assent as guarantors should be given to the extension, and true to their self-imposed duty, they all, on the 9th of August, signed a written assent on the back of their guaranty, Avith the exception of Joseph Clare, who Avas Avilling to sign, but accidentally failed so to do-. This written assent or agreement Avas, it is true, incomplete without his signature. Had he signed it, no question could have arisen, as to whether the defendants had agreed to the extension, or whether the plea of acting in the capacity of directors should save them from liability as guarantors. But this agreement, signed by all the defendants except one, though incomplete, furnished material evidence of the intention of the parties thereto. It Avas put in evidence by the plaintiffs, under objection, and *626 when the plaintiffs rested their case, the court, upon motion of the defendants, withdrew it from the consideration of the jury. In this, we think the court erred. As a prominent fact or circuihstance, tending to show the actual assent of the guarantors to the extension of time, it was admissible in evidence to the jury, and should not at any time have been excluded.
It appears from the record, that Rutherford & Co. accepted, in writing, the proposition made them in the resolution of the board of directors for an extension of time, with the proviso, that the guarantors would consent to such extension in the written form of agreement accompanying the acceptance. As we have before observed, this written agreement was not perfected by obtaining all the required signatures; but Rutherford & Co. saw fit, notwithstanding, to proceed in their work, upon the actual assent of the guarantors signified in unmistakable methods. The proposed form of agreement which they desired the defendants to consent to, was for their own benefit, and they were privileged to waive the same, without thereby impairing their right to the extension granted to them by the railroad companjr.
The original action was brought by the plaintiffs in error, to recover the amount of the monthly estimate for September, 1877, covering the work done and material furnished between the first and the twentieth day of that month. It is in contention, that there can be no recovery, as the guaranty of the defendants is for the payment of monthly estimates only, and that the work done during the last month of the contract was the proper subject of a final estimate only, and therefore not included in the defendants’ agreement. It is said that a surety has a right to stand upon the very terms of his contract, beyond which his liability is not to be extended by implication. But, while that is conceded, it is also true, that the terms used, and language employed in guaranties and obligations of sureties, are to have a reasonable interpretation, accord *627 ing to the intent of the parties, as disclosed by the instrument read in the light of the surrounding circumstances, and the purposes for which it was made. Belloni v. Freeborn, 63 N. Y., 383; Douglass v. Reynolds, 7 Pet. (U. S.), 113.
The defendants agreed and pledged themselves for the payment of monthly estimates, in accordance with the contract of June 29, 1877, with the exception of the retained fifteen per cent. The contract of June 29, in modification of the original contract, calls for the payment thereafter, monthly as per estimates of the engineer,of the amount of such estimates, on all the road from Columbia to Mt. Carmel, until the same is ready for the rolling stock, less the above-named percentage retained. If the company, however, should conclude to extend the. road no further than Mt. Carmel, a final estimate was then to be made, and the amount thereof paid to Rutherford & Co., upon their giving the proper release to the railroad company. It was evidently deemed by the contractors, Rutherford & Co., as essential, if not absolutely necessary, to the successful prosecution of their work, that during the progress of the work, they should receive partial payments to meet bills for labor and material, and not be compelled to wait until the completion of the road and a final settlement. The company, in June, 1877, being unable to pay for the work already done, and there being no better prospect of payments in the future, a continuation of work on the road was secured, by means of the defendants’ guaranty of the payment of eighty-five percent. of the monthly estimates.
Under the interpretation which we place upon the contract with the railroad company, it contemplated a monthly estimate, for each and every month, in which any work, more or less, was done on the road, up to its com-, pletion. It would be a forced and unreasonable construe-, tion, and contrary to the obvious intention of the parties at the date of the instrument, to hold, that if unforeseen *628 circumstances had crowded all the work into the last month of the contract, the guarantors would thereby be discharged from their engagement, because such work was not the subject of a monthly estimate.
There were to bef “estimates oh all the road, from Columbia to Mt. Carmel,” and those estimates were to be paid “to Rutherford & Co. monthly.” Every part of the road, up to a given point, thus became the subject of a monthly estimate, whether constructed in the first or in the last month of the contract. But, it is suggested, that the contract provides, that if the railroad company should conclude to stop at Mt. 'Carmel, a final estimate was then to be made, which would preclude the idea of any other estimate in the same month. We find nothing in the contract which renders a final estimate — for the payment of which the contractors looked to the railroad company — inconsistent with a monthly estimate in September, for the payment of eighty-five per cent, of which they look to the guarantors, as well as to the company.
The functions of the two kinds of estimates were separate and distinct. The final estimate was not confined to the amount of work done or material furnished in the month of September, when the road was finished. It was designed rather as a revision of the entire work after its completion. Fifteen per cent, of the value of each monthly estimate having been retained as a pledge for the faithful performance of the contract, a final estimate would embrace a review of the whole period of operations. If, upon making such final estimate, the contractors were found to be underpaid, the deficiency would be made up to them; and, if overpaid, the excess would be deducted from the fifteen per cent, retained by the company.
On the trial in the court below, the plaintiffs put in evidence, under objection by the defendants, a final estimate of the date of November 1, 1877, from which, by computation, the monthly estimate for September preceding could easily be made. But, when the *629 plaintiffs rested their case, the court, upon defendants’ motion, withdrew the paper called the “final estimate” from the' jury. In this we think the court erred. The final estimate furnished material evidence in support of the plaintiffs’ claim, and should not have 'been withdrawn from the consideration of the jury.
We are of opinion, that the judgments of the courts below should be reversed, and the cause remanded for_ a new trial.

Judgment accordingly.