FREEMAN et al. v. WAXMAN et al.

(Supreme Court, Appellate Term.    May 5, 1904.)

1. PRINCIPAL AND SURETY—DEFALCATION.

> An agreement by defendants to become bound in the sum of $100 in case an employé of plaintiffs' left them during a certain season, and they sustained loss through his leaving, merely made defendants liable for proved damages in the event the employè left, and did not render them liable for a defalcation.

· Appeal from Municipal Court, Borough of Manhattan, Ninth District.

Action by Herman Freeman and another against Nahum Waxman and another. From a judgment for plaintiffs, defendants appeal. Reversed.

Argued before FREEDMAN, P. J., and LEVENTRITT and GREENBAUM, JJ.

John Gruenberg, for appellants.

Jacob Freeman (Isidore Osorio, of counsel), for respondents.

LEVENTRITT, J.    Plaintiffs had recovery in a suit brought on the following instrument:

"H. Freeman & Son,

"Manufacturers of Ladies' Wrappers,

"152–154–156 Wooster Street.

"New York, July 10, 1903.

"For and in consideration of One ($1.00) dollar, we hereby bind ourselves to H. Freeman & Son, in the sum of One hundred dollars, in case Mr. E. Greenfield leaves them during the fall season of 1903 and they sustain loss through his leaving.

"Waxman & Melger    [L. S.],
"No. 147 E. Broadway."

·Plaintiffs and defendants had never met. According to the plaintiffs, they advertised for a salesman, and the Mr. Greenfield mentioned in the instrument presented himself. They required some guaranty for the samples to be intrusted to him, and thereupon Greenfield obtained the instrument. According to the defendants, Greenfield came to them, asking for a guaranty, so that he could get a position as foreman with the plaintiffs. It is undisputed that the instrument was drawn and proffered by the plaintiffs. After being employed in the latter's store for a short time, Greenfield was sent on the road with samples exceeding $100 in value. He also received a sum in cash. Subsequently a further cash remittance was sent him, apparently in the early part of August. Nothing has been heard of him since. The fall season ended on December 15th.

I am of the opinion that the instrument sued on will not support the action. The contract is in writing, and is to be construed according to its terms. It is unnecessary to invoke any question of strictissimi juris. "Where the question is as to the meaning of the language of the contract, there is no difference between the contract of the surety and that of anybody else." Gamble v. Cuneo, 21 App. Div. 413, 47 N. Y.

88 N.Y.S.—9

Supp. 548; Belloni v. Freeborn, 63 N. Y. 383. Applying the ordinary rules of construction, we get little from the situation of the parties, as they had never met. The defendants signed the instrument as tendered to them by the plaintiffs through Greenfield. The contract seems quite unambiguous on its face, and seems to be anything rather than a surety's contract for the fidelity of an employé. It would seem to be simply a contract binding the defendants to liability for proved damages in the event that the employé left the employment. It was a contract to insure service for a stipulated time. It is not an assumption of liability in the event of defalcation. It may well be that the plaintiffs intended to get a fidelity contract, but, in the absence of ambiguity in the instrument, and of facts and circumstances which sometimes permit the construction of the promise in the sense which the promisor must have believed the promisee to have accepted it (Gamble v. Cuneo, supra), we are remitted to the plain terms of the instrument itself. That would appear to be merely an engagement that Greenfield would continue in the plaintiffs' employ for the fall season. Had it been intended as a contract of fidelity, it is not likely that the liability would have been limited to a special season, but would have been extended instead to the full term of the employment. The words "sustain loss through his leaving" are not definite enough to cover a case of defalcation. They must be read in connection with what immediately precedes, and refer to the direct pecuniary loss that may be suffered as a result of Greenfield's leaving the employment during the period for which his services were apparently most desired.

The judgment must be reversed, and a new trial ordered, with costs to appellant to abide event. All concur.