ELIZABETH C. HALSEY and CAROLINE F. H. HALSEY, Plaintiffs, *v.* ALFRED A. BROWN and Others, Defendants, and L. GORDON HAMERSLEY, Impleaded Defendant.

CAROLINE F. H. HALSEY and Others, Plaintiffs, *v.* JOHN P. McARDLE and Others, Defendants, and L. GORDON HAMERSLEY, Impleaded Defendant.

County Court, Suffolk County, September 9, 1941.

*George W. Percy,* for the plaintiffs.

*Davies, Auerbach, Cornell & Hardy* [*Kenneth W. Greenwalt* of counsel], for the defendant Alfred A. Brown.

*J. Hutton Hinch,* for the defendant John P. McArdle.

*Emmet, Marvin & Martin,* for the impleaded defendant.

HILL, J.   These two actions, brought by plaintiffs to foreclose mortgages on two pieces of real property, were tried together, the plaintiffs in both actions being the same and the facts being similar in both actions.   Although the defendants in the two actions are not the same, the defendants interested present the same problems to the court for consideration.

In the action of the plaintiffs against Brown, plaintiffs seek to foreclose a mortgage in the amount of $65,000, executed and delivered by Brown on or about November 5, 1930, given to secure a bond in like amount, also executed at the same time by Brown.   In the McArdle action, plaintiffs seek to foreclose a mortgage given on real property in the town of Southampton, N. Y., in the amount of $123,333, signed and delivered by John P. McArdle, together with a bond in like amount, on the 2d day of January, 1931.

There has been a default in the payment of interest on both bonds and taxes on both pieces of real property for several years. In both actions the plaintiffs have prayed for a deficiency judgment against the defendants who signed the bonds.   The defendants Brown and McArdle in their answers did not deny any of the material allegations of the complaints except that they alleged that the mortgages and bonds accompanying same were executed at the behest of one Bartow H. Hall, an attorney acting at the time for L. Gordon Hamersley.

There is no dispute that L. Gordon Hamersley is the real party in interest, he having undertaken to assemble a considerable tract of land in Southampton for the purpose of erecting a dwelling thereon.

After being served with copies of the summons and complaints in this action, both Brown and McArdle asked Hamersley to defend, which he refused to do.   Thereafter an order was obtained from this court directing Hamersley to be brought in as an impleaded defendant and directing the service of a cross-complaint against him in each action.   Brown and McArdle alleged in their cross-complaints that the property referred to in the complaints was purchased by Hamersley, who was the real party in interest, and that in his negotiations for the purchase of this real property, and several contiguous parcels which Hamersley intended to purchase, Hamersley did not desire to have it known or have it appear publicly that he was the purchaser.   Had it been known, as Hamersley alleges, that he, a very rich man, was purchasing property in the town of Southampton, the asking price for property would have immediately increased.   Hamersley wrote to his agent and

attorney, Hall, explaining this fact, and thereafter Hall undertook to " blind " the transaction by getting Brown and McArdle to take the properties in their respective names and to execute the bonds and mortgages, and simultaneously therewith execute deeds to the City Real Estate Company.

Considerable testimony was offered by both sides leading up to these transactions; some of the details appear to be missing and Brown and McArdle do not agree with Hall on all material points. Both McArdle and Brown say that Hall told them in substance that Hamersley was a very wealthy man, which is not disputed, and was assembling various parcels of real property in Southampton for the purpose of creating an estate, and in order to do so to best advantage it was necessary to " blind " the transaction. It must be kept in mind that Brown and McArdle were well acquainted and associated with Hall, both men of substance and with responsible positions, McArdle an attorney with considerable property, earning approximately $15,000 a year, Brown an accountant, also with some property and earning a substantial salary.

The transactions were completed, the bonds and mortgages signed and deeds simultaneously given and checks given to Brown and McArdle in the sum of twenty-five dollars each, which they claim Hall told them was in the nature of a gratuity, Hamersley wishing to show his appreciation for assisting him in " blinding " the transaction. Hall says this was in payment of an agreement which was in substance that both Brown and McArdle agreed to sign a bond and mortgage for a fee, namely, twenty-five dollars. There is some conflict of testimony here, for Hamersley in his bill of particulars states that the respective defendants agreed to sign the bonds and mortgages for a fee of $100.

Hamersley paid all of the necessary sums, namely, the down payment, mortgage taxes, filing fees, and others, and thereafter paid the taxes and the interest on the mortgages. Neither McArdle nor Brown ever undertook to do anything except sign their names to the bonds, mortgages and deeds. Some time after the taking of title to these two properties Hamersley " soured " on the transaction or found some other property more to his liking, but the need for " blinding " did not end in Hamersley's mind until after the execution of the bonds and mortgages above referred to. Hamersley paid the taxes and the interest on the mortgages for many years but still anonymously through agents.

Considerable time has elapsed since the agreements were entered into. In the meantime Hall has become unable by reason of sickness to continue in the practice of the law. It was apparent

when he testified that he was not a well man. It is not reasonable to expect that after ten years persons could remember every little detail of a conversation, and under the circumstances it is necessary for the court to try and piece together the facts from testimony offered and decide what the parties really intended.

It is quite apparent in the first place that neither Brown nor McArdle would have undertaken to obligate himself for large sums of money on a bond for a fee of twenty-five dollars. It is almost preposterous to believe that such a thing could have happened, and on the other hand Hall, acting for Hamersley, could never have had it in mind that Hamersley would have defaulted in the payment of interest. Hamersley could have paid cash for the properties, but did not do so for the reason that he wanted to " blind " the transaction. This deal was not speculation and it is apparent that Hall was as much surprised as any one when Hamersley failed to complete the assembling which he had undertaken. Hence, Hall could not have had it in his mind to warn either McArdle or Brown that they would be responsible for any possible deficiency judgment in case Hamersley changed his mind, because he knew and informed McArdle and Brown that Hamersley was a very wealthy man and would at all times be financially able to complete the transaction. So it must be apparent that at least McArdle and Brown never even suspected that they would be called upon to defend an action of this kind and Hall could not have warned them of the fact because he too did not have it in his mind that such a contingency would ever arise.

The impleaded defendant Hamersley, in his brief, claims that Hall was not his agent, but merely a lawyer acting for him. This cannot be so, for Hamersley was not going to sign the bonds and mortgages. He had furnished no " dummies." Hall was to arrange all of these details and select the persons to act. Hall signed the first contract of sale but did not sign either the bond or mortgage. Hamersley confirmed and ratified all of Hall's acts.

Hamersley contends that these cross-complaints are premature in that neither McArdle nor Brown has been injured. The cases hold otherwise. (*Belloni* v. *Freeborn*, 63 N. Y. 383; *755 Seventh Ave. Corp.* v. *Carroll*, 266 id. 157.)

This is an action in equity wherein the principles of equity should govern. Hamersley, a wealthy man, in effect asks McArdle and Brown to pay any deficiency judgments which might be entered in this action, a transaction in which McArdle and Brown could have no interest, financial or otherwise, except possibly a gratuity of twenty-five dollars, or as a favor to an associate, Hall. Could it

be said equitably or morally that McArdle and Brown should pay Hamersley's debts or obligations? I think not. To do so would probably ruin both McArdle and Brown. The inference can easily be drawn that if Hamersley should be called upon to pay for his own mistake or whim, it would mean very little.

It is, therefore, the judgment of this court that Hamersley is liable for any deficiency that may be entered by the plaintiffs against McArdle and Brown, and that Hamersley pay the attorneys' fees and expenses necessarily incurred by McArdle and Brown in the defense of this action, proofs of which will be taken upon eight days' notice to Hamersley's attorneys.

Submit orders on notice.