## REPUBLISHED

■ FEDERAL INSURANCE COMPANY, Respondent, v ALEXANDER D. WALKER, JR., Defendant and Third-Party Plaintiff-Appellant. UNION CAMP CORPORATION et al., Third-Party Defendants-Respondents.—Order, Supreme Court, New York County, entered June 19, 1978, and the judgment entered thereon on August 18, 1978, (1) granting the motion and cross motion by plaintiff-respondent and third-party defendants-respondents for reargument, respectively, (2) vacating the earlier order filed January 17, 1978, (3) directing partial summary judgment on the first and second causes of action for plaintiff-respondent in the sum of $52,800 with the remainder of plaintiff's claim to be assessed, (4) granting partial summary judgment to the third-party defendants-respondents dismissing the third-party complaint, (5) granting summary judgment on the counterclaim of third-party defendants in the sum of $3,796.20, with interest, for dividends wrongfully retained by deceased, Helen Earle Walker, and (6) directing that the claim of third-party defendants for attorneys' fees and expenses be fixed at an assessment, modified, on the law, to the extent of (1) denying the motion by the third-

party defendants for summary judgment dismissing the third-party complaint, without costs or disbursements, and (2) granting summary judgment in full in the sum of $114,842.25 plus interest, to the plaintiff on the first and second causes of action, and otherwise affirmed, with $75 costs and disbursements of this appeal only to the plaintiff in its action against the defendants. In February, 1970, decedent, Mrs. Walker, bought 1,140 shares of Union Camp Corporation common stock. In March, 1970, she indorsed, negotiated and transferred the certificates representing these shares. Because the transaction was not duly recorded by the corporation or its transfer agent, she continued to receive dividends thereafter. Decedent's son, Alexander Walker, Jr., ultimately administrator of his late mother's estate, was aware that she was receiving dividends, but could not locate the certificates. He therefore advised her to notify the transfer agent, third-party defendant Morgan Guaranty Trust Company, of the presumed loss. Thereafter, two indemnity agreements were executed. First, to induce the issuance of duplicate shares, decedent executed an indemnification agreement and affidavit of loss with plaintiff-respondent, Federal Insurance Company, under its blanket bond plan with Union Camp Corporation, wherein she agreed to indemnify Union Camp, Morgan Guaranty as its transfer agent, and Federal Insurance as surety, for "any and all liabilities, loss, damage or expense in connection with, or arising out of their compliance with the request of deponent". She also attested in these instruments to a diligent search for the original certificates and to no recollection of the fate of the certificates. Furthermore, she specifically stated that she had not sold, assigned, nor transferred the originals or any interest therein. These statements amounted to misrepresentation of the facts upon which the parties relied. Decedent's son also executed a personal guarantee of indemnity agreeing to indemnify only Federal Insurance for any and all loss, damage or expense it might incur. This was done as an additional inducement to Federal to execute the bond under the blanket bond plan. Federal issued its bond to Morgan Guaranty and Union Camp agreeing to indemnify them for any loss or expense sustained as a result of their issuing replacement stock to Mrs. Walker. The bond provided that if the original certificates were recovered, the surety, Federal, would, on demand, deliver for cancellation either the original or duplicate certificates or pay their full market value to the assured. Following issuance of the surety bond, replacement certificates were issued to Mrs. Walker. Shortly thereafter, in August, 1973, she sold these replacements for $52,800. In September, 1975, the transfer agent notified the surety that a recent audit disclosed that the Walker stock certificates claimed to have been lost had actually been canceled in March, 1970, but that the transaction had not been recorded. To correct the overissuance of stock certificates, the transfer agent, under the provisions of the blanket bond, then made a formal demand for 1,140 shares of Union Camp common stock in negotiable form for cancellation, and for a sum of $8,185.20 to cover overpayment of dividends for the period involved. The surety, in turn, made demand upon Mrs. Walker and her son for the shares and dividend overpayments. In October, 1975, counsel for the estate and Mr. Walker requested Federal to take no action until counsel assessed the merits of the claim. Negotiations then ensued between counsel for the estate and Mr. Walker, and counsel for the surety and the transfer agent. In February, 1976, there was proposed to the transfer agent as settlement for the claim, the $52,800 decedent received from the sale of the replacement stock in 1973 and an amount equal to the dividends she received from June, 1970, after she sold the original stock, until the 1973 sale, approximately

$3,800. The estate had disclaimed any other liability based on the failure properly to record the 1970 sale by decedent. This offer was not accepted. Union Camp was compelled to purchase the stock in the open market. Union Camp stock had split 3 for 2 in the interim between the surety's demand in September, 1975, and the purchase date in August, 1976, and so purchase of the then current equivalent of the original 1,140 shares cost Union Camp $108,515.25, substantially more than it would have been in October, 1975. The surety reimbursed Union Camp under the bond for the $108,515.25 purchase price paid, and $6,327 representing the payment of dividends on the replacement certificates from the date of the surety's assumption of liability to the date of cancellation of the replacement shares, for a total of $114,842.25. The surety then brought this action against Mr. Walker individually and in his capacity as administrator of his mother's estate, to recover under the two indemnity agreements. A third-party action was brought by Mr. Walker in his dual capacity against the corporation and the transfer agent, alleging negligence in failing to cancel the certificates upon the 1970 sale by Mrs. Walker and in not properly reflecting such transfer on the books. Further, negligence was alleged in the failure to discover the original error through several audits, or to discover the overissuance upon the 1973 sale of the replacement stock until September, 1975. The third-party defendants Union Camp and Morgan Guaranty contend the indemnity agreements control. The surety under its bond plan was clearly obligated to pay the corporation and its transfer agent the full amount of the loss. The language of the bond required the surety to pay the full market value of the stock and covered situations where loss was caused by an indemnitee's negligence. The surety properly sought recovery to the full extent of its payment under its indemnity agreements with Mr. Walker and decedent. The contractual obligation set forth in these agreements specified indemnification of the surety for "any and all liabilities * * * or expense" arising out of the stock reissuance. There is no basis for attributing any negligence of the corporation or the transfer agent to the surety. The motion by the plaintiff for summary judgment on the first and second causes of action was granted in part only, at Special Term, in the amount of $52,800, the figure that was received by decedent on the second sale in 1973, plus $3,796.20, the dividends for the period between the first and second sale. As to the surety, summary judgment should have been granted in full for the actual buy-in purchase price and the dividends involved. The third-party claim was dismissed by Special Term on the merits. It is important to note that the third-party claim of negligence is based on a different duty than that owed by decedent and Mr. Walker to the surety under their contractual arrangement. Third-party defendants rely on recent cases (*Margolin v New York Life Ins. Co.*, 32 NY2d 149; *Levine v Shell Oil Co.*, 28 NY2d 205; *Kurek v Port Chester Housing Auth.*, 18 NY2d 450; *Liff v Consolidated Edison Co.*, 23 NY2d 854, affg 29 AD2d 665) for the proposition that the all-inclusive language in the agreement of decedent to indemnify the corporation and its transfer agent, extends to any loss occasioned by their negligence relating to the stock reissuance, although this was not specifically provided for in that agreement. However, in this case there were two separate and distinct instances of possible negligence, only one of which, it appears, may have been within contemplation of this indemnity agreement. One act of negligence is that of the corporation and its transfer agent in not recording the 1970 sale. The second was in failing to ascertain within a reasonable period of time thereafter that there had been a transfer, during which time the value of the stock appreciated. It is for the trier of

fact initially to determine whether there was any negligence in not discovering the original mistake, and, if there was negligence, at what point the third-party defendants should have learned of the mistake. Thus, some of the monetary loss incurred may be found to be due to the negligence of the third-party defendants. Unlike the indemnification agreement executed by decedent, the agreement of decedent's son extends only to the surety, not to the corporation and its transfer agent. Thus, there is no basis on which to preclude Mr. Walker, in his individual capacity, on his claim over against third-party defendants for their negligence in failing to ascertain within a reasonable time that the original stock had been transferred. However, the scope of their duty to him needs to be explored. Concur—Kupferman, Lane, Lupiano and Lynch, JJ.

Murphy, P. J., dissents in part in a memorandum, as follows: The rights and obligations of the parties to this proceeding must be measured by three instruments, viz., (i) the decedent's "affidavit of loss and indemnity agreement" (decedent's indemnity agreement), (ii) defendant Walker's "agreement of indemnity", and (iii) plaintiff Federal's "blanket bond". These three instruments must be analyzed to resolve the issues raised on this appeal. To the extent here relevant, the decedent's indemnity agreement provides: "(5) Deponent hereby requests, and this affidavit and agreement of indemnity is made for the purpose of inducing the Corporation, its transfer agents, registrars and trustees, depositaries, redemption, fiscal and paying agent, (1) to refuse to recognize any person other than deponent as the owner of the original and to refuse to make any payment, transfer, registration, delivery or exhange called for by the original to any person other than deponent or to refuse to take any other action pursuant to the request or demand of any person other than deponent, and (2) to issue a new or duplicate or definitive security or other instrument in substitution for the original, or to make the payment, transfer, registration, delivery or exchange called for by the original without the surrender thereof for cancellation. Deponent furthermore requests Federal Insurance Company to assume liability in respect of the replacement or payment of the original herein referred to under its Lost Security Blanket Bond No. 8002-38-69 to the Corporation and others. * * * (8) Depondent agrees in consideration of compliance with the foregoing request to indemnify and protect the Corporation, any person, firm or corporation now or hereafter acting as its Transfer Agent, Registrar, Trustee, Depositary, Redemption, Fiscal or Paying Agent, or in any other capacity, and also any successors in any such capacities and the Surety, their respective successors and assigns, hereinafter collectively called the 'Obligees', from any and all liabilities, loss, damage or expense in connection with, or arising out of their compliance with the request of deponent herein set forth, and further agrees to furnish to the above named obligees, without any expense to them, a new bond of indemnity, in such form and amount as said obligees may require, with satisfactory surety or sureties, in case the above-described Lost Security Blanket Bond and this Agreement of Indemnity should not at any time for any reason in the opinion of said obligees or any of them afford sufficient protection." It should be stressed that the decedent requested Federal to assume liability under its blanket bond upon the reissuance of the subject stock. There is no evidence in this record that the decedent was unaware of the terms of the blanket bond when she executed that indemnification. In any event, she should not have signed the indemnification agreement if she was unaware of the terms of the blanket bond agreement. Furthermore, the indemnification agreement provides that the three obligees, including third-party defendants Union and Morgan,

could require her to replace Federal's blanket bond with a more satisfactory one. In this background, the defendant, as decedent's administrator, cannot validly object to the fact that Morgan made claim under the blanket bond against Federal. It should be further emphasized that Morgan, as an obligee, had a choice, in the first instance, of proceeding against Federal on its blanket bond or the decedent on her indemnification agreement (57 NY Jur, Suretyship and Guaranty, § 265, p 649). Morgan chose, as was its right, to make claim against Federal on September 4, 1975. Paragraph 8 of decedent's indemnification agreement provides indemnity for liability to be incurred as well as for damages actually paid (*MacArthur Bros. Co. v Kerr,* 213 NY 360, 366; *Belloni v Freeborn,* 63 NY 383, 388; 57 NY Jur, Suretyship and Guaranty, §§ 358, 360). Therefore, when Federal made demand upon the decedent on September 12, 1975, the decedent was liable to Federal for any losses or damages that Federal might be required to pay to Morgan under the blanket bond. The decedent had a reasonable time after Federal's demand to fulfill her responsibilities under the indemnification agreement. After the passage of a reasonable period of time, the decedent would necessarily have to be considered in default under the indemnification agreement. Notwithstanding any default on the decedent's part, Federal would normally be required to fulfill its obligation to Morgan under the blanket bond within a reasonable time frame. Morgan, in turn, would be obliged to retire the overissued stock within a reasonable period of time. As will be more fully developed below, ordinary rules for calculating damages cannot be followed in this proceeding because the attorney for the defendant, in his individual and representative capacities, requested that Federal and Morgan delay in taking any action with regard to the overissued stock. Both Federal and Morgan are thus excused for any part of a delay occasioned by their acquiescence in that request. Walker's indemnification agreement, to the extent here pertinent, provides: "1. To indemnify and save harmless said Company from and against any and all loss, damage, expense and attorneys' fees which it shall at any time incur by reason of its execution of said Assumption Certificate assuming liability for the issuance of new or replacement certificates under the said Blanket Lost Original Instrument Bond, or its payment of any claim or liability thereunder; and will place said Company in funds, to meet all its liability under said Blanket Lost Original Instrument Bond, promptly on request and before it may be required to make any payment thereunder, and that the voucher or other evidence of payment by said Company of any loss, damage, expense, attorneys' fees, claim or liability, shall be prima facie evidence of the fact and amount of the Indemnitor's liability under this agreement." This agreement only ran from Walker to Federal. Again, this agreement takes cognizance of the fact that an assumption certificate was being issued by Federal under its blanket bond. In his affidavit, Walker does not deny the fact that he was aware of the terms of the blanket bond and that Morgan could, in proper circumstances, make claim under it. Moreover, Walker should not have signed the agreement if he had not seen or if he disagreed with the terms of the blanket bond. Therefore, he has no valid reason to complain that Morgan chose, in the first instance, to seek indemnification from Federal. Because Walker agreed to make payment to Federal even before Federal was required to pay Morgan, Walker was obligated to indemnify Federal for its potential liability on the blanket bond. As was discussed above in relation to the decedent's indemnification agreement, Walker too was requested to make payment within a reasonable time after demand was made upon him by Federal on or about September 15, 1975. A discussion of the

damages recoverable against Walker will also be found below. The blanket bond, running from Federal to Morgan, provides in relevant part: "NOW, THEREFORE, THE CONDITIONS OF THIS OBLIGATION ARE that if the Obligor, its successors or assigns, shall, in case the Original Instrument be found or come into the hands, custody or power of any person, deliver or cause the same to be delivered unto Assured in order to be canceled, and shall also at all times defend, indemnify and save harmless Assured from and against any and all claims, actions and suits, whether groundless or otherwise, and from and against any and all liabilities, losses, damages, costs, charges, counsel fees and other expenses of every nature and character by reason of the Original Instrument and/or the issuance of a duplicate or duplicates in lieu thereof or in lieu of any instrument or instruments of purported like issue and amount which because of alteration, change or counterfeit may not be identified as or as not the said mutilated, mislaid, lost, stolen or destroyed Original Instrument, or the making of any payment, credit, transfer, registration, conversion, exchange or delivery in respect of the Original Instrument without surrender thereof and/or in respect of the duplicate or duplicates, whether or not caused by, based upon or arising out of the honoring or refusing to honor the Original Instrument when presented by anyone, and/or whether or not caused by, based upon, or arising out of inadvertence, accident, oversight or neglect on the part of Assured, or any of them, or their respective officers, agents, clerks or employees, and/or omission or failure to inquire into, contest or litigate the right of any applicant to receive any payment, credit, transfer, registration, conversion, exchange, issue or delivery in respect of the Original Instrument and/or the duplicate or duplicates issued in lieu thereof, and/or caused by, based upon or arising out of the release of any security or the satisfaction of any instrument or instruments under which the Original Instrument and/or duplicate or duplicates are issued or secured, and/or caused by, based upon or arising out of any one such event or any combination of such events or out of any other matter or thing whatsoever, then this obligation shall be void; otherwise shall remain in full force and effect." Federal was required to indemnify and hold Morgan harmless from, *inter alia,* all damages and liabilities even if those damages or liabilities arose from Morgan's own neglect. The above-quoted excerpt from the bond does not make any distinction in the type of negligence for which Morgan would be indemnified. Consequently, there is no basis for drawing any artificial division between Morgan's original negligence in failing to record the decedent's 1970 sale and its subsequent negligence in failing to discover the error in its records. Parenthetically, it should be noted that both indemnification agreements are silent on the effect of the third-party defendants' negligence on their right to recover under those agreements. Therefore, it cannot be said that one type of negligence was contemplated under those indemnification agreements and another type of negligence was not so contemplated. However, both those indemnification agreements do permit Federal, as surety, to recover from the decedent and the defendants for any losses or damages it has incurred. A fair reading of those indemnification instruments indicate that the decedent and the defendant contemplated that they might be required to indemnify Federal for losses and damages it suffered under the blanket bond. At this point, an important distinction should be drawn. Federal is entitled to recover damages for moneys expended in lawfully fulfilling its obligations under the blanket bond. Federal is not entitled to any indemnification from the decedent and the defendant for any extraordinary damages caused by (i) its own inordinate delay in honoring its commit-

ments under the blanket bond or (ii) Morgan's inordinate delay in retiring the overissued stock. (See, generally, 57 NY Jur, Suretyship and Guaranty, §§ 383, 384.) For example, it will be assumed that Morgan waited too long before it retired the stock and that it thus paid $50,000 more than it would have paid had the stock been retired in a timely fashion in September of 1975. Under its blanket bond, Federal was only required to pay those damages that Morgan would have normally sustained if it retired the stock within a reasonable time period. Federal, in this hypothetical situation, would only be required to pay that portion of Morgan's claim as reasonably flowed from the overissuance of the stock. Hence, it should reject that portion of the claim attributable to Morgan's inordinate delay in returning the stock. If Federal, whether deliberately or inadvertently, paid more than should have been paid, then the defendant, in his dual capacity, should raise that matter as a defense in any suit brought by Federal for indemnification. If the defendant prevailed on that defense, then so much of Federal's claim for indemnification as constituted an overpayment to Morgan would be disallowed. It would be improper to pay Federal the full amount sought for indemnification and then allow the defendant to seek recovery on a third-party complaint. To do so would result in a possible inconsistency in any determination resolving the dispute. An award to Federal for the full amount paid to Morgan infers the fact that Morgan had a right to recover that full amount in the first place. Any subsequent award on the third-party complaint would negate that fact for it would require Morgan and/or Union to pay the defendant moneys it had previously recovered from Federal. Clearly, in this case, Federal, Morgan and Union had both the obligation and the financial resources to mitigate damages by retiring the stock even if the defendant and the decedent breached their indemnification agreements in September of 1975. (See, generally, 13 NY Jur, Damages, § 24, p 453.) Defendants' attorney, however, asked on October 6, 1975, that no action be taken by Federal or Morgan. The record indicates that settlement negotiations continued among the three parties until the end of February, 1976. At that point in time, defense counsel made an offer of settlement and that offer was apparently rejected. The record does not disclose whether settlement negotiations continued until Morgan purchased the stock on August 18, 1976. If negotiations terminated on or about March 1, 1976, then it was incumbent upon Morgan to mitigate damages by purchasing the stock within a reasonable time period. On the other hand, Morgan might have been justified in waiting until August 18, 1976 if the negotiations requested by defense counsel were continuing. This is a factual matter that must be determined on the assessment. In sum, summary judgment was correctly granted to Federal on its claim under the indemnification agreements. The record reveals that the value of the subject stock was ascending in the period after the loss was discovered. Therefore, until more exact damages can be fixed, the interim award of $52,800 should be permitted to stand. It should also be emphasized that plaintiff does not object to the amount of that interim award on this appeal. At the assessment, the court should set the additional amount of damages in accordance with this opinion. If Federal is not entitled to recover the full amount it paid Morgan, then the amount requested in the complaint should be reduced accordingly. Since the overpayment issue should be resolved under the action in chief, the third-party complaint should be dismissed. For the foregoing reasons, the order of the Supreme Court entered June 19, 1978, and the judgment entered

thereon on August 18, 1978, should be affirmed. The order of this court entered on January 17, 1980 [73 AD2d 870] is vacated. Settle order.