DENNIS MALONEY, Appellant, *v.* SAMUEL NELSON et al.; Respondents.

A mortgage recited that the mortgagee had signed a bail bond, as surety for one O'B., in the penal sum of $10,000, and that the mortgagor was "desirous of indemnifying and saving harmless" said mortgagee "from all loss or damage on said bond." In case of default in the performance of the conditions of the bail bond the mortgagee was given power to sell the mortgaged premises "*according to law.*" In an action to foreclose the mortgage it appeared that O'B. failed to appear, and his recognizance was duly forfeited. There was no proof that plaintiff had ever paid any money by reason of the bail bond. *Held,* that although the strict condition of the mortgage made it due upon failure of O'B. to appear, yet construing this with the clause stating the purpose of its execution, it was obvious that the intention was to secure the mortgagee from any loss or damage, to an amount not exceeding the sum named ; and so, in the absence of proof that plaintiff had paid all or some portion of the amount named in the bail bond, the action could not be sustained.

*Rector, etc.,* v. *Higgins* (48 N. Y. 532), distinguished.

*It seems,* that such a contract of indemnity is not void as against public policy.

(Argued December 5, 1894; decided December 18, 1894.)

APPEAL from order of the General Term of the Supreme Court in the first judicial department, made June 30, 1893, which reversed a judgment in favor of plaintiff entered upon a decision of the court on trial at Special Term and ordered a new trial.

This action was brought to foreclose a mortgage given by the defendant to the plaintiff on the 16th of October, 1891. The mortgage recites that,

" WHEREAS, The said party of the second part has signed as one surety a bond or recognizance in the penal sum of ten thousand dollars, that Thomas O'Brien shall appear to answer the charge against him in whatever court it may be presented, and shall at all times render himself amenable to the orders and process of the court, and, if convicted, shall appear for judgment, and render himself in execution thereof, and which

bond or recognizance was entered into this day before Hon.
Jacob H. Clute, Albany county judge; and the said party of
the first part is desirous of indemnifying and saving harmless
the said party of the second part from any or all loss or
damage upon said bond or recognizance;

"Now, therefore, this indenture witnesseth that the said
party of the first part, in consideration of the sum of one dol-
lar to him in hand paid by the party of the second part, and
for the better securing of the said party of the second part,
does grant and release unto the said party of the second part
and to his heirs and assigns forever:

(Here follows the description of the land mortgaged.)

"To have and to hold the above-granted premises unto the
said party of the second part, his heirs and assigns forever.

"Provided always that, whereas the said party of the
second part has signed as one surety a bond or recognizance
in the penal sum of ten thousand dollars, that Thomas O'Brien
shall appear to answer the charge against him in whatever
court it may be prosecuted, and shall at all times render him-
self amenable to the orders and process of the court, and, if
convicted, shall appear for judgment and render himself in
execution thereof, and which bond or recognizance was entered
into this day before Hon. Jacob H. Clute, Albany county
judge. Now, therefore, if there shall be no default in the
said bond or recognizance so signed by the party of the second
part, and as is provided by a bond of even date herewith
signed by the party of the first part, then these presents and
the estate hereby created shall cease, determine and be void.

"And the said party of the first part covenants with the
party of the second part as follows:

"That if default be made in the above-named conditions, or
any of them, the party of the second part shall have power to
sell the premises therein described according to law."

The mortgage was given in connection with a bond dated
at the same time, and upon condition that it should be void
under the same circumstances as are stated in the mortgage.

It appeared on the trial that on the 2nd of November, 1891,

a term of the Court of Sessions was held in the county of Albany, at which Thomas O'Brien was bound to appear under the conditions of the bail bond above mentioned, and that he then failed to appear or to hold himself amenable to the orders or process of the court. Thereupon the recognizance entered into by him and by the plaintiff as his bail was duly forfeited. The trial court found that by reason of the failure of O'Brien to appear according to the condition of the bond there was a breach of the condition contained in the mortgage herein and of the bond accompanying the same, and that the sum of $10,000 secured by such bond and mortgage thereupon became due and payable to the plaintiff by the defendant. There was no proof upon the trial that the plaintiff had ever paid any money by reason of the bail bond which he had signed, but the court held that such proof was unnecessary; that by the terms of the mortgage it became due upon proof of the failure of O'Brien to appear in accordance with the bail bond, and that the measure of damages was the amount mentioned in the bond and mortgage, for which sum judgment of foreclosure was ordered.

The General Term upon appeal reversed the judgment in favor of the plaintiff and granted a new trial upon the ground that the bond was simply a bond of indemnity against the payment by the plaintiff of the amount of the bond which he had signed for the appearance of O'Brien or such part thereof as he was compelled to pay. The plaintiff has appealed from such order and given the usual stipulation for judgment absolute in case of affirmance.

Further facts are stated in the opinion.

*Abram J. Rose* for appellant. The bond in suit is a positive covenant on the part of the defendant Nelson for the performance of a specific act and is not one of indemnity, and on a breach of this covenant the amount secured by the bond became due and can be recovered without payment being first made. (*Rector, etc., v. Higgins,* 48 N. Y. 533; *Belloni v. Freeborn,* 63 id. 384; *Kohler v. Matlage,* 72 id. 259; *Bank*

*of Newburgh* v. *Bigler*, 83 id. 61; *Conner* v. *Reeves*, 103 id. 529; *Wells* v. *Miller*, 66 id. 255; *Harrison* v. *Sawtell*, 10 Johns. 242; *Barry* v. *Ransom*, 12 N. Y. 462.) The bond is not void by public policy. (*Simpson* v. *Roberts*, 35 Ga. 180; *U. S.* v. *Ryder*, 110 U. S. 729; *Holmes* v. *Knight*, 10 N. H. 175; *Anderson* v. *Spence*, 72 Ind. 315; *Keesling* v. *Frazier*, 119 id. 185; *People* v. *Ingersoll*, 14 Abb. Pr. [N. S.] 23; Code Crim. Pro. §§ 586, 589.)

*Roger W. Sherman* for respondents. The contract to indemnify the plaintiff was a contract against public policy. (2 Pars. on Cont. 746; *Oscanion* v. *Arms Co.*, 103 U. S. 261, 267; *U. S.* v. *Simmons*, 47 Fed. Rep. 575; *Goodrich* v. *Houghton*, 134 N. Y. 115; *Herman* v. *Jeuschnes*, L. R. [15 Q. B. Div.] 561; *Jones* v. *Orchard*, 16 C. B. 614; *U. S.* v. *Ryder*, 110 U. S. 735.) There was no consideration for the obligation. (3 Pom. Eq. Juris. § 1202; *Minturn* v. *Seymour*, 4 Johns. Ch. 497; *Burling* v. *King*, 66 Barb. 633; 1 Story's Eq. Juris. § 6.)

PECKHAM, J. We think the court at General Term was right in its construction of the bond and mortgage. The true question is, what was the intention of the parties to the mortgage? The circumstances appearing from the recitals both in the mortgage and in the bond accompanying it, would seem to show beyond controversy that the intention of the parties was to obtain and to give indemnity to the plaintiff against any loss or damage which he might sustain by reason of being compelled to pay the amount or any part thereof named in the bail bond which he had signed. The plaintiff was under no obligation other than that contained in his bail bond, and if the party for whom he went bail did not appear there would then arise a liability to pay by reason of that bond, but the amount that he would finally be compelled to pay would under the circumstances be uncertain. Of course it might be that he would be compelled to pay the full amount named in the bond; but it is also well known that the payment by

bail in such cases is very much governed by the circumstances which happen after the forfeiture of the recognizance. If the bail subsequent to the forfeiture secure the attendance of the party it is almost a thing of course to remit a large portion of the bond. So that the forfeiting of the recognizance, while it rendered certain the fact that the condition had been broken, and that the party to the bond might be called on to pay it all, yet still in reality the amount which he would have to pay would very probably be much less than the full sum named in the bond, provided he procured the attendance of his principal at some other term. Obviously the purpose of this mortgage was to secure the bail against loss or damage which he would be compelled to suffer by reason of these circumstances. And although the strict condition of the mortgage made it become due upon the failure of the party bailed to appear, yet that language must be construed in connection with the other language of the instrument showing the end and purpose for which it was given. It will be observed that the defendant has not by his bond or mortgage entered into any contract to do anything in discharge of the obligation which had been assumed by and existed against the plaintiff. There is no promise on the part of the defendant either in the bond or in the mortgage that he will, in discharge of plaintiff's obligation, procure the attendance of O'Brien at the time named in the bail bond. The plaintiff, by his bail bond, agreed that O'Brien should appear, and he further agreed that in case O'Brien did not appear the plaintiff would pay the $10,000. The defendant herein has not undertaken either in the bond or mortgage given to plaintiff to do anything in discharge of that obligation of the plaintiff. He has not agreed to produce O'Brien, and so far as this bond and mortgage are concerned, he has made no promise to the plaintiff to pay to the People, in discharge of the plaintiff, the amount of the bail bond or any portion of it. He has not, therefore, made the liability or the debt of the plaintiff his own. In this respect the case differs from those cases where an individual agrees to do a particular thing, such as to pay

money to a third party in exoneration and discharge of the original liability of his principal to such third party. In such case it may be conceded that the right of action becomes complete on the defendant's failure to do the particular thing he agreed to do. Thus, if A. entered into a bond to pay money to B. at a certain time, and C. thereupon entered into another bond to A. to himself pay that money to B., in such case C. becomes liable to pay the money, and the condition of the bond is broken by his failure to pay, and A. has a right of action against C. to recover the money, without proof that A. has paid his bond to B. But where the real purpose of the undertaking is indemnity against loss or damage to be sustained from a payment by A. of the obligation which he has entered into, there the surety to A. can be proceeded against and a recovery had from him only upon proof that A. has paid the money or some portion of it which he was obligated to pay. Herein lies the difference between this case and that of *Rector, etc., of Trinity Church* v. *Higgins* (48 N. Y. 532.) The defendant in that case was the lessee of the plaintiff, and in the lease he covenanted to pay and discharge all the taxes and assessments which should be imposed upon or grow due or payable out or by reason of the demised premises. The defendant failed to pay the amount of two assessments, and the action was brought by the plaintiff without its having paid them, and no evidence was offered to show that any proceedings had been taken by the corporation of the city of New York to enforce their collection. The defendant upon the trial moved for a non-suit on the ground that the plaintiffs failed to show that they had paid the assessments, and that, therefore, they failed to show that they had sustained any damage. The motion was denied and judgment was ordered for the plaintiffs for the amount of the assessments. Upon appeal to the General Term of the Superior Court of the city of New York the verdict was set aside and an order made granting a new trial, from which the plaintiff appealed to this court. It was held here that the covenant of

the defendant was a primary and not a collateral or second-ary one in its terms, and that there was no language contained in it which would convey the idea that the plaintiffs were first to pay the assessments before a cause of action arose against the defendant on account of the non-payment thereof; that the covenant was broken when the defendant neglected to pay assessments or taxes duly imposed, and that the defendant was not at liberty to say it was a debt of the plaintiffs, and that the latter must first pay it, and that then defendant would pay them; that it was his own debt, made so by the terms of the covenant.   Various cases were cited, in the course of the opinion of Judge LEONARD, showing the distinction which I have above stated, and holding that in case of mere indemnity damage must be proved by showing payment of some kind before the cause of action accrues.

It is urged that, assuming this to be an indemnity, the meaning of the mortgage is that the plaintiff was to be supplied by the defendant with the funds with which to pay his liability as soon as such liability was incurred, and that the liability was incurred by the failure of the person bailed to appear in accordance with the condition of the bail bond. But I do not think that is the reasonable and natural construction to be given to the instrument upon a review of all the language used therein.   What amount the plaintiff will have to pay by reason of the default in the bail bond is not made certain by the mere default of the principal in the bail bond. The utmost limit of it is rendered certain of course, but that was certain before default was made.   It could not exceed the amount named in the recognizance.   How much less it might be would depend upon circumstances happening thereafter.   I think it clear that the parties had in contemplation, not the payment of the amount named in this bond to the plaintiff upon the mere failure of the principal in the bail bond to appear, but it was given "as security" to repay to the plaintiff the amount which he might be called upon to pay and which he did pay consequent upon such default. Upon the whole we think that without proof that the plain-

tiff had paid all or some portion of the amount named in the bail bond, the action to foreclose this mortgage cannot be sustained. The amount that plaintiff may be called upon to pay, and which he does pay, may be recovered back by a future action to foreclose this mortgage.

This leaves it unnecessary to consider the other defenses set up in the answer of the defendant Nelson, although we must say that the claim that the defendant's contract was void as against public policy, does not impress us as being a good defense, at least in this state.

For the reasons already given we think the order of the General Term reversing the judgment for plaintiff and granting a new trial should be affirmed, and judgment absolute rendered against the plaintiff herein, with costs.

All concur, except O'BRIEN, J., dissenting.

Judgment accordingly.