MacArthur Brothers Company, Appellant, *v.* Edward
W. Kerr, as Executor of Mary Crage, Respondent.

Indemnity bonds — construction of agreement by indemnitor
to repay any damages to which indemnified might become liable
even before such damages should be paid — action on such bond
by assignee of the party indemnified thereby.

1. Parties, if they so desire, may enlarge the ordinary scope of a
bond of indemnity, and create an obligation thereunder to dis-
charge a liability which has accued without waiting for actual
satisfaction thereof by, and damage to, the indemnified.

2. Defendant's testatrix gave a bond to indemnify a surety com-
pany upon its undertaking guaranteeing the faithful performance
of a contract by sub-contractors doing work for plaintiff.   The bond
contained the usual provision that the surety would "indemnify,
and keep indemnified, and save harmless, the said company from
and against all loss, damage, costs, charges, counsel fees and
expenses," and also provided that said indemnitor did "further
covenant and agree to pay to said company or its representatives
all damages for which said company or its representatives shall
become responsible upon said bond or undertaking .before said
company or its representatives shall be compelled to pay the same;
any sum so paid, however, to be applied to the payment of such
damages."   The sub-contractors failed to fulfill their obligations
and complete their contract as provided and guaranteed by the
undertaking of the surety company.   The plaintiff thereupon
brought an action upon such undertaking.   The defendant's testa-
trix was notified of this action and requested to defend, but failed
so to do and a judgment was recovered against the surety company
for the full amount of the undertaking.   Subsequently, and with-
out payment of any money, the surety company transferred to plain-
tiff the bond of indemnity given to it by defendant's testatrix, with
all rights of action therein and thereunder, and in consideration of
such transfer the judgment against the surety company was satis-
fied.   Plaintiff then brought this action upon the bond.   *Held*, that
by recovery of judgment against the surety company after the notice
to testatrix the liability of the company on its bond was conclusively
established as against the testatrix, and that the latter under the
terms of her bond became liable to the surety company because of
the liability thus established against it without waiting for actual
payment and satisfaction of such liability by the company.   Also
that by assignment of said bond and cause of action by the surety

company to plaintiff, the latter became entitled to maintain this action thereon.

*MacArthur Brothers Co.* v. *Kerr*, 155 App. Div. 690, reversed.

(Argued November 17, 1914; decided January 5, 1915.)

Appeal from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered March 14, 1913, affirming a judgment in favor of defendant entered upon a dismissal of the complaint by the court at a Trial Term.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Thomas C. Lawrence* and *Charles J. Staples* for appellant. The Pennsylvania judgment in favor of plaintiff herein and against the surety company is binding upon the estate of Mrs. Crage, defendant, due notices of all proceedings having been served upon her as indemnitor. (*Mayor* v. *Brady*, 151 N. Y. 611; *Carleton* v. *Lombard, Ayres & Co.*, 149 N. Y. 137; *Vil. of Port Jervis* v. *First Nat. Bank*, 96 N. Y. 550; *Cornell* v. *Travelers' Ins. Co.*, 175 N. Y. 254; *Oceanic Co.* v. *Campania Trans. Esp.*, 144 N. Y. 663; *Rochester* v. *Campbell*, 123 N. Y. 412; *Revere Copper Co.* v. *Dimock*, 90 N. Y. 33.) The Pennsylvania judgment, in fixing the extent of damages for which the indemnitee, the surety company, was liable determined the exact sum of money which Mrs. Crage, the defendant herein, was obligated to pay, under the terms of her covenant in the indemnity agreement. (*Ulster* v. *Young*, 161 N. Y. 23; *Nat. M. Bank* v. *Conklin*, 90 N. Y. 116; *Foo Long* v. *American Surety Co.*, 146 N. Y. 254.) The indemnity agreement executed by Mary Crage was not only to " save harmless; " it was specifically a covenant and agreement binding defendant " to pay  *  *  * all damages before said company shall be compelled to pay the same." (*Gilbert* v. *Wiman*, 1 N. Y. 550; *Hume* v. *Hendrickson*, 79 N. Y. 117; *Konitzky* v. *Meyer*, 49

N. Y. 571; *Miller* v. *Miller Knitting Co.,* 52 N. Y. Supp. 184; *Rector, etc., of Trinity Church* v. *Higgins,* 48 N. Y. 532; *Maloney* v. *Nelson,* 144 N. Y. 182; *Rector, etc., of Trinity Church* v. *Vanderbilt,* 98 N. Y. 170; *Sage* v. *Truslow,* 88 N. Y. 240; *National Bank of Newburgh* v. *Bigler,* 83 N. Y. 61.) The establishment of the liability of the surety company to the MacArthur Brothers Company by the Pennsylvania judgment was an event against which Mrs. Crage covenanted in the agreement of indemnity. (*Connors* v. *Reeves,* 103 N.Y. 527; *Annott* v. *Torry,* 35 N.Y. 256; *Douglass* v. *Ferris,* 138 N. Y. 201; *Konitzky* v. *Meyer,* 49 N. Y. 571; *Bridgeport Ins. Co.* v. *Wilson,* 34 N. Y. 275.) The liability of Mrs. Crage under her indemnity covenant accrued when the Pennsylvania judgment was rendered. "Before" its entry against the surety company Mrs. Crage was obligated under her contract "to pay" the sum of money necessary to cover the damages. The assignment to plaintiff transferred all rights of action against defendant. (*Chase* v. *Hinman,* 8 Wend. 452; *McBeth* v. *McIntyre,* 57 Cal. 49; *Oakes* v. *Schefferly,* 74 Cal. 478; *White* v. *French,* 81 Mass. 839; *Gilbert* v. *Wiman,* 1 N. Y. 550; *Showers* v. *Wadsworth,* 81 Cal. 270; *Sage* v. *Truslow,* 88 N. Y. 240; *E. Nat. Bank* v. *Kaufmann,* 93 N. Y. 273; *Everson* v. *Gere,* 122 N. Y. 290.) Payment to the MacArthur Brothers Company by Mrs. Crage for any loss sustained through the failure of sub-contractors was contemplated in Mrs. Crage's covenant "to pay" all damages "before" the surety company was obliged to pay them. (*Vulcan Iron Works* v. *Pittsburgh-Eastern Co.,* 144 App. Div. 827; *Lawrence* v. *Fox,* 20 N. Y. 268; *Smyth* v. *City of New York,* 203 N. Y. 106; *Neale* v. *N. Y. Steam Co.,* 147 App. Div. 725; *C. Nat. Bank* v. *Dumary,* 206 N. Y. 550; *Pond* v. *N. R. Water Co.,* 183 N. Y. 330.)

*Frank A. Abbott* for respondent. The agreement to pay the said company or its representatives all damages for

which said company or its representatives shall become responsible upon the said bond or undertaking before said company or its representatives shall be compelled to pay the same, was purely one of indemnity and until such time as loss occurred to the surety company there was no damage arising under the Crage agreement. (*Maloney* v. *Nelson,* 144 N. Y. 182; *Rector, etc., of Trinity Church* v. *Higgins,* 48 N. Y. 532.)

Hiscock, J.  The appellant entered into a contract for railroad construction in the state of Pennsylvania.  It made a sub-contract with the firm of Lamorte & McCabe to do part of the work and received from the Fidelity and Deposit Company of Maryland a bond guaranteeing to the extent of $2,000 the faithful performance by said sub-contractors of their contract.  As a condition of executing this bond said Fidelity and Deposit Company required and received a bond executed by said sub-contractors and the respondent's testatrix for its indemnity and protection and which amongst other things contained the following material provision:

" *Second.* That said Mary Crage (the testatrix) shall and will at all times indemnify, and keep indemnified, and save harmless the said company from and against all loss, damages, costs, charges, counsel fees and expenses whatsoever which said company shall or may for any cause, at any time, sustain or incur by reason or in consequence of said company having executed or agreed to execute said instrument (its bond to appellant as surety for said sub-contractors); and do further covenant and agree to pay to said company or its representatives all damages for which said company or its representatives shall become responsible upon the said bond or undertaking before said company or its representatives shall be compelled to pay the same, any sum so paid, however, to be applied to the payment of such damages."

Said sub-contractors failed to fulfill their obligations and complete said contract as provided and guaranteed by

[213 N. Y.]          Opinion, per Hiscock, J.          [Jan.,

the Fidelity and Deposit Company, and subsequently an action was brought by the appellant against said company on said bond to recover the full amount thereof, because of such default. The respondent's testatrix with proper references to her obligations on her undertaking before mentioned was duly notified of the commencement and prosecution of this action and requested to defend the same, which, however, she failed to do. The plaintiff in that action recovered a judgment against the Fidelity and Deposit Company for the full amount of its undertaking and later without payment of any money the latter transferred to the former the bond executed to it by respondent's testatrix and all rights of action thereon and thereunder and in consideration of such transfer the judgment recovered against it as aforesaid was satisfied. On said assignment and transfer appellant brought this action and the question, thus far decided adversely to it, is whether any cause of action had accrued in favor of the Maryland company against the respondent's testatrix on her undertaking which it could transfer to the appellant. It seems perfectly plain to us that there had.

By the recovery of the judgment against it, after notice to the testatrix of the action and request to defend, the liability of the Fidelity and Deposit Company as surety on its bond was conclusively established as against her, even though the judgment was recovered in a foreign state. (*Konitzky* v. *Meyer*, 49 N. Y. 571–576.)

The question which testatrix or her representatives thereafter could litigate was whether the liability thus established against the Maryland company was one against which she had indemnified it under her undertaking.

It is admitted that the undertaking executed by the testatrix would have bound her to indemnify the Maryland company if the judgment against it had been paid and thereby actual damage incurred. It is, however, insisted that this was the limit of her obligation; that the bond was one of ordinary indemnity and became effective

only when the indemnified had suffered actual damages by payment of money or in some equivalent manner.

It may be conceded that this would be the interpretation and effect of a bond of indemnity in the usual form, but of course the parties to the undertaking in question had a perfect right to provide otherwise if they saw fit and this was what they did. In the first sentence of the provision which has been quoted from the bond, the indemnitor obligated herself in the usual manner to " indemnify, and keep indemnified, and save harmless the said company from and against all loss, damage, costs, charges, counsel fees and expenses," and if this were all this appeal would be easily and surely decided in accordance with the contentions of the respondent. But after this obligation was thus expressed said indemnitor did " further covenant and agree to pay to said company or its representatives all damages for which said company or its representatives shall become responsible upon said bond or undertaking before said company or its representatives shall be compelled to pay the same, any sum so paid, however, to be applied to the payment of such damages." The parties certainly must have intended something by this additional clause. If they did not design to change the measure of liability stated by the first clause and incident to ordinary bonds of indemnity, it was utterly senseless to add the second clause. Assuming, therefore, as we should, that they meant something by the employment of this additional provision and that it is not to be entirely disregarded, we are simply called on to give to it a reasonable interpretation. This seems to be perfectly plain. It binds the indemnitor to pay to the indemnified " all damages for which said company   *   *   *   shall become responsible   *   *   *   before said company or its representatives shall be compelled to pay the same." What could be clearer than this language ? It is only by some technical interpretation that we can find anything else than a simple agree-

ment by the surety to discharge any liability for which the indemnified might become "responsible," "before," that is, without waiting for enforcement of this liability by payment and the infliction of damages in the ordinary manner.

It seems to be beside the question to say in opposition to this that this was a bond of indemnity, that the Maryland company did not pay any money to satisfy the judgment against it and that, therefore, no damages have been suffered against which indemnity can be asked.   Of course the bond was one of indemnity, and it might have been fitted to this latter theory, but it was not.   The thing it indemnified against was not damages actually suffered, but liability for damages.

That situation arose.   By a judgment which was conclusive against the surety the indemnified was adjudged to be liable in the sum of two thousand dollars on account of matters contemplated by her bond and which judgment so far as appears was enforceable at any time.   Before and, therefore, without discharging this responsibility by payment, the indemnified was entitled to demand of the surety that she pay the judgment in accordance with the terms of her undertaking.   This was a perfected right of action which could be assigned and transferred and which may be enforced by the appellant as such assignee.

If authorities are needed to sustain the proposition that parties if they so desire may enlarge the ordinary scope of a bond of indemnity and create an obligation thereunder to discharge a liability which has accrued without waiting for actual satisfaction thereof by, and damage to, the indemnified in this manner they may be easily found.   (*Chace* v. *Hinman,* 8 Wend. 452; *Rector, etc., of Trinity Church* v. *Higgins,* 48 N. Y. 532; *Hume* v. *Hendrickson,* 79 N. Y. 117, 127; *Maloney* v. *Nelson,* 144 N. Y. 182; *Showers* v. *Wadsworth,* 81 Cal. 270.)

It is true that the *Maloney* case is cited by the respondent as sustaining the opposite doctrine to that being adopted, but a proper consideration of that case shows that it recog-

nized fully the rule that a bond may be given indemnifying against mere liability, but that in construing any bond the intention of the parties is to be considered and effectuated, and it was thought that all the facts in that particular case made it improbable that the surety intended to assume any liability beyond that assumed in an ordinary bond of indemnity against damages actually suffered.

It seems to have been thought by the learned trial judge that although the indemnity was against liability, the satisfaction of the judgment without payment of any money terminated the liability and destroyed any cause of action which might otherwise have existed. This view also was erroneous as applied to the facts of this case. If the judgment against the Maryland company had been voluntarily and gratuitously discharged there would have been left no cause of action under the bond. But this is not what happened. On the recovery of the judgment against it, if we are right, a cause of action for the amount of the judgment accrued in favor of said company against testatrix which presumably was collectible and good. It transferred and parted with this claim, which was a thing of value, as a consideration for the satisfaction of the judgment. If it had consummated and satisfied the liability indemnified against under the bond by paying in money the judgment which had been recovered, I do not suppose that it would be claimed that it had lost its rights because the judgment had been satisfied, and I am not able to see that the transaction actually occurring presents any different aspect. Instead of collecting in its own name the damages to which it was entitled and paying them to appellant in satisfaction of the judgment, the company transferred to its creditor the right directly to collect those damages and received a discharge of the judgment, which was thereby satisfied. By the same transaction which effected the satisfaction of the judgment it was meant to transfer to appellant and preserve the cause of action against testatrix which had already accrued and

become perfect, and it would be an unfortunate destruction of the substance of the arrangement and a defeat of the intention of the parties if it were held for a technical reason that this purpose had miscarried. (*McBeth & Compton* v. *McIntyre*, 57 Cal. 49.)

The judgment appealed from should be reversed and a new trial granted, with costs to abide event.

WILLARD BARTLETT, Ch. J., WERNER, COLLIN, CUDDEBACK, HOGAN and CARDOZO, JJ., concur.

Judgment reversed, etc.