**Harry L. OAKES, Plaintiff,**

v.

**GRAHAM TOWING CO., Inc., Defendant and Third-Party Plaintiff,**

and

**R. T. C. SHIPBUILDING CORP., Third-Party Defendant.**

**Civ. A. No. 14980.**

United States District Court
E. D. Pennsylvania.

Aug. 4, 1955.

Avram G. Adler and Freedman, Landy & Lorry, for plaintiff.

Robert N. Ferrer and Clark, Ladner, Fortenbaugh & Young, for defendant and third-party plaintiff.

Thomas E. Byrne, Jr., and Krusen, Evans & Shaw, for third-party defendant.

KIRKPATRICK, Chief Judge.

The plaintiff, a seaman on the M. V. Samuel H. Herron, brought this action against the owner of the vessel, his employer, to recover damages for injuries sustained as the result of a fall from a ladder which he was ascending in order to board the vessel, which was in drydock at the time. The defendant brought in R.T.C. Shipbuilding Corp., which was repairing the vessel, as a third-party defendant. Shortly before the trial the shipowner made a reasonable settlement with the plaintiff in the amount of $4,500, leaving, as the only issue in the case, the question whether R.T.C. is liable to the owner in the amount of the settlement, by way of indemnity. The case was tried to the Court without a jury.

The vessel had been taken on the floating drydock for repairs on September 4, 1952, and the accident occurred about two weeks later. It entered the drydock under control of R.T.C. employees and thereafter remained under their control, to a large extent. It was centered and made fast by the use of lines provided by R.T.C. and handled by that company, and R.T.C. employees went on board to make the repairs contracted for. At the same time, a number of the ship's personnel, including the officers, remained on board engaged in making repairs of a minor nature.

As a means of ingress and egress to and from the ship, R.T.C. provided and set up two wooden ladders, one forward and one aft. Because of the work being done, toilet facilities on the ship had been put out of use and the men could reach a toilet only by descending one of the ladders, traversing the drydock, and going up onto the pier.

At the time he was hurt, Oakes was returning from a trip to the toilet. When he was part way up the ladder, he was caused to slip by a considerable accumulation of grease on one of the ladder steps. As he tried to save himself the ladder, not having been lashed at deck level, swayed or wobbled and he fell from it.

The floor of the drydock was littered with equipment and covered with oil and grease. Men traversing it were bound to get grease on their shoes, which is undoubtedly the way in which the grease came to be on the ladder.

Regardless of who furnished the ladders, they constituted the only means for the ship's crew to get off and on

the ship and, as such, became a part of the ship itself. The shipowner's failure to keep the ladder free of dangerous accumulations of grease made the ship unseaworthy and, in addition, constituted negligence.

It does not appear how long the grease had been on the step. The captain testified that "there is always some dirt from the shoes, and stuff like that, on the ladder." He also testified that he had used the ladder 45 minutes before the accident and that there was no "dangerous" accumulation of grease at that time. However, I think that the length of time it had remained there is immaterial. I do not think that the rule of the Cookingham case, Cookingham v. United States, 3 Cir., 184 F.2d 213, applies here, the difference being that in the present case the shipowner had full knowledge that the conditions surrounding the vessel were such that grease in dangerous quantities was likely to get on the ladder. In other words, it had notice that a transitory condition, dangerous to the crew, could arise at any time. The Cookingham case would not have been decided as it was if it had appeared as a fact that the floor of the galley was and had been for a week or more liberally smeared with spilled jello.

The shipowner was, therefore, not only justified in making settlement with the plaintiff but was really under compulsion to do so.

The basis of the right which the shipowner is seeking to assert against R.T.C. is contractual. Crawford v. Pope & Talbot, Inc., 3 Cir., 206 F.2d 784, 792; McFall v. Compagnie Maritime Belge, 304 N.Y. 314, 107 N.E.2d 463.

"The fundamental theory is that where a person has a nondelegable duty with respect to the condition of his premises or vessel but has made a contract with another to perform that duty, and the other performs it negligently so as to make the owner liable to a person later injured, then, as a matter of implied contract, the owner is entitled to restitution from the other for reasonable damages paid the injured person." Barber S.S. Lines v. Quinn Bros., Inc., D.C., 104 F.Supp. 78, 80, 1952 A.M.C. 750.

All the circumstances of the case—R.T.C's control of the vessel, the fact that it furnished the only means of ingress and egress which the crew could use, its ownership of the drydock and the premises on which the work was being done, its contractual relation with the shipowner—evidence the fact that R.T.C. impliedly, if not expressly, had undertaken to discharge the non-delegable duty of providing safe ingress and egress.

This obligation it negligently failed to perform. It had just as much, probably more, notice of the conditions existing in the drydock and the danger of oil and grease accumulating on the ladder as the shipowner. So far as appears, it made no effort whatever to keep the ladder even reasonably clean. It could have done that easily, or it might have obviated the necessity of the men's traversing the drydock by placing a gangway direct to the pier. It did neither.

As was stated in Raskin v. Victory Carriers, Inc., D.C., 124 F.Supp. 879, 880, quoting Crawford v. Pope & Talbot, supra, "* * * even in the absence of an express covenant, a right to indemnity may arise from 'the circumstances surrounding the contractual relationship between the employer and the third party' and inheres in the obligation arising from a contract involving the performance of work ' "to do that work in a careful and prudent manner whether that duty was expressed in the contract or not." ' "

I am of the opinion that R.T.C. is liable by way of indemnity to the shipowner.

Counsel for the third-party defendant has suggested that this Court may lack jurisdiction of the case by reason of the fact that no diversity of citizenship exists between the third-party defendant and the third-party plaintiff, and

has called my attention to the decision of the District Court of Colorado in E. K. Carey Drilling Co. v. Murphy, 113 F.Supp. 226. That opinion does appear to hold that the elimination by settlement (in that case consummated by a judgment) of the original party plaintiff, the only party as to whom there was diversity, deprives the Court of jurisdiction to proceed with the issues raised by the third-party complaint. The Court based its conclusion chiefly upon State of Maryland, etc. v. Robinson, D.C., 74 F.Supp. 279, which it deemed the leading case upon the subject, but I am unable to agree with the Court's view of the scope of that decision. I think that neither the State of Maryland case nor Thomas Worcester, Inc., v. Clover Stores Corp., D.C., 11 F.R.D. 334, (also cited by the Colorado Court) goes any further than to decide that where a Court has obtained jurisdiction of a third-party defendant solely because the third-party action is ancillary to the main action,[1] the question whether to proceed with the third-party action after the original suit has been settled is a matter for the sound discretion of the Court. This discretion is to be exercised upon the basis of the simplification of procedure in accordance with the spirit of Rule 14, 28 U.S.C., and the avoidance of unnecessary duplication and roundabout methods of disposing of controversies.

In the present case every consideration is in favor of the Court's exercising its discretion to retain the jurisdiction originally acquired. The issue raised by the third-party complaint has been fully tried by this Court. The citizenship of the third-party defendant did not appear in the pleadings and no question of jurisdiction was called to the attention of the Court until after all the witnesses had been heard and the trial completed. Counsel for the third-party defendant in his letter to the Court states that he prefers to have the controversy disposed of on the merits, if that is possible. It seems to me that unless there is a lack of jurisdiction, it would be absurd to compel the parties to go through a second trial in the state court. I am satisfied that jurisdiction of this action has not been lost, and I exercise my discretion not to dismiss the action.

Judgment for third-party plaintiff.

---

[1]. In the present case, the third-party action is unquestionably connected with and ancillary to the main action. Jurisdiction of the original action depended upon the maritime nature of the cause of action and not, as in the cases above mentioned, upon diversity of citizenship of the parties, but that, it seems to me, is of no importance.