265 F.2d 804
 Elizabeth M. DERY, as Administratrix of the Goods, Chattels
and Credits which were of Percy A. Dery, Deceased, Plaintiff,
v.
William WYER, as Trustee of The Long Island Railroad
Company, Defendant and Third-Party
Plaintiff-Appellant, McKeon Lumber
Corporation, Third-Party
Defendant-Appellee.
 No. 41, Docket 24735.
 United States Court of Appeals Second Circuit.
 Argued November 10, 1958.
Decided March 26, 1959.
 
 William F. McNulty, New York City (William J. O'Brien, New York City, on the brief), for defendant and third-party plaintiff-appellant.
 Joseph Kane, New York City (Evans, Orr, Gourley & Pacelli, and Walter G. Evans, New York City, on the brief), for third-party defendant-appellee.
 Before HINCKS, LUMBARD and MOORE, Circuit Judges.
 HINCKS, Circuit Judge.
 
 
 1
 In November, 1953, plaintiff's intestate, a brakeman employed by the Long Island Railroad Company, was killed when he was knocked from the side of a moving freight car by a gate post located on the land of McKeon Lumber Company. Under the Federal Employers' Liability Act, 45 U.S.C.A. 51 et seq., the plaintiff-administratrix, a citizen of New York, brought an action against the defendant as trustee of the Railroad. The defendant filed a third-party complaint against the Lumber Company, claiming full indemnity for any loss for which it might be held liable to the plaintiff. Both the Railroad and the Lumber Company were citizens of New York. With the litigation in this posture, the plaintiff's action was settled for $30,000; thereafter the third-party action was tried to the court, upon an agreed stipulation of the facts. Judge Abruzzo decided that both the Railroad and the Lumber Company were at fault. The situation, he held, was governed by the terms of a written agreement between the parties which provided that 'if any * * * liability * * * shall arise from the joint or concurring negligence of both parties it * * * shall be borne equally.' His judgment therefore provided that each should contribute $15,000 to this settlement. From this judgment the Railroad appeals claiming to be entitled to complete indemnity.
 
 
 2
 The district court's jurisdiction over the third-party complaint was not questioned below but at our request the point was briefed by the parties and is before us now. The questions for decision are whether the district court had jurisdiction to entertain the third-party complaint, independent grounds of federal jurisdiction being absent;[1] and whether federal jurisdiction over the third-party claim, if it once attached, survived the settlement of the main action upon which federal jurisdiction depended. We think that both questions must be answered in the affirmative.
 
 
 3
 The contemporary sanction for third-party procedure in the federal courts is Rule 14 of the Federal Rules of Civil Procedure, 28 U.S.C.A. which provides that a defendant with the permission of the court, on a claim arising out of the transaction or occurrence that is the subject matter of the plaintiff's claim against the third-party plaintiff, may implead a person not theretofore a party to the action who 'is or may be liable to him for all or part of the plaintiff's claim against him.'[2] The general purpose of the rule was 'to avoid two actions which should be tried together to save the time and cost of a reduplication of evidence, to obtain consistent results from identical or similar evidence, and to do away with the serious handicap to a defendant of a time difference between a judgment against him and a judgment is his favor against the third-party defendant.' 3 Moore's Federal Practice, P14.04.
 
 
 4
 To understand the basic theory of Rule 14 it is necessary to remember that in the Federal Rules of Civil Procedure the word 'claim' has a somewhat broader connotation than that which prior to the Rules pertained to a 'cause of action.' 'It is used to denote the aggregate of operative facts which give rise to a right enforceable in the courts.' Original Ballet Russe v. Ballet Theatre, 2 Cir., 133 F.2d 187, 189. As this court noted in Clark v. Taylor, 2 Cir., 163 F.2d 940, 942: 'The theory adopted in the new rules * * * has been that the 'transaction' or 'occurrence' is the subject matter of a claim, rather than the legal rights arising therefrom; additions to or subtractions from the central core of fact do not change this substantial identity * * *.' American Fidelity & Casualty Co. v. Owensboro Milling Co., 6 Cir., 222 F.2d 109; 2 Moore's Federal Practice, page 359 et seq. The same aggregate or core of facts may give rise not only to rights in the plaintiff against the defendant but also to rights in the defendant against third parties. Under Rule 14, as amended, in the discretion of the court a defendant in the very action which determines the plaintiff's right against him may have a determination of any right of his against another which arises out of the same transaction or set of facts which gave rise to the plaintiff's claim. It is the theory of the Rule that the defendant' right against the third party is merely the outgrowth of the same aggregate or core of facts which is determinative of the plaintiff's claim. In this view, the court which has jurisdiction over the aggregate of facts which constitutes the plaintiff's claim needs no additional ground of jurisdiction to determine the third-party claim which comprises the same core of facts. It is, we think, in this sense that the court is said to have ancillary jurisdiction over the third-party claim.
 
 
 5
 The great weight of authority amongst the federal district court is to the effect that when federal jurisdiction over the subject-matter of the main action once attaches the court has ancillary jurisdiction to decide a third-party dispute growing out of the same core of facts and hence within the scope of the Rule even though the dispute, separately considered, is lacking in the attributes of federal jurisdiction. This appears from the cases listed in 3 Moore's Federal Practice, P14.26 n. 6 and 1958 Supplement, page 496. See also Foster v. Brown, Chesnut, Judge, D.C.D.Md., 22 F.R.D. 471. In a number of appellate court opinions there is discussion which clearly supports that conclusion. Lesnik v. Public Industrial Corp., 2 Cir., 144 F.2d 968; Walmac Co. v. Isaacs, 1 Cir., 220 F.2d 108; United States v. Acord, 10 Cir., 209 F.2d 709, certiorari denied 347 U.S. 975, 74 S.Ct. 766, 98 L.Ed. 1115; Sheppard v. Atlantic States Gas Co., 3 Cir., 167 F.2d 841; Williams v. Keyes, 5 Cir., 125 F.2d 208, certiorari denied 316 U.S. 699, 62 S.Ct. 1297, 86 L.Ed. 1768. Cf. American Fidelity & Casualty Co. v. Owensboro Milling Co., supra. In Bernstein v. N.V. Nederlandsche-Amerikaansche, 2 Cir., 173 F.2d 71, this court recognized the presence of ancillary jurisdiction over a third-party claim thus importing that no independent ground of jurisdiction was required, although, as it happened, an independent ground, disversity, was there present.
 
 
 6
 Our conclusion as to the ancillary character of a third-party claim under Rule 14 is fortified by cases in the cognate field of compulsory counterclaims under Rule 13. This court is committed to the majority rule that such a counterclaim-- even one which impleads a new party[3] -- may rest on ancillary jurisdiction without need for an independent ground of federal jurisdiction. United Artists Corp. v. Masterpiece Productions, Inc., 2 Cir., 221 F.2d 213; Lesnik v. Public Industrial Corp., 2 Cir., 144 F.2d 968, 975. See Moore v. New York Cotton Exchange, 270 U.S. 593, 46 S.Ct. 367, 70 L.Ed. 750; 3 Moore's Federal Practice, P13.15.
 
 
 7
 A rule of procedure, of course, however convenient and salutary it may be, is without efficacy to extend the jurisdiction of a court. See Hurn v. Oursler, 289 U.S. 238, 53 S.Ct. 586, 77 L.Ed. 1148; Fed.Rules Civ.Proc., Rules 82. But Rule 14 does not extend jurisdiction. It merely sanctions an impleader procedure which rests upon the broad conception of a claim as comprising a set of facts giving rise to rights flowing both to and from a defendant. For solution of the incidental jurisdictional problems which often attend utilization of the procedure, the concept of ancillary jurisdiction, which long antedated the Federal Rules, may often be drawn upon. See, e.g., Dewey v. West Fairmont Gas Coal Co., supra; Moore v. New York Cotton Exchange,supra; Empire Lighting Fixture Co., v. Practical Lighting Fixture Co., 2 Cir., 20 F.2d 295; Lesnik v. Public Industrial Corp., supra; 3 Moore's Federal Practice, P14.02; The Ancillary Concept and the Federal Rules, 64 Harv.L.Rev. 968. In this case, we hold, the jurisdiction which the court below had acquired over the plaintiff's claim was broad enough to comprehend jurisdiction of the ancillary third-party claim and that the ancillary jurisdiction attached when the impleader was accomplished.
 
 
 8
 We also hold that the ancillary jurisdiction over the third-party complaint was not lost when the main cause of action was settled. Generally, in a diversity action, if jurisdictional prerequistes are satisfied when the suit is begun, subsequent events will not work an ouster of jurisdiction. Mullen v. St. Paul Mercury Indemnity Co. v. Red St. Paul Mercury Indemnity Co. v. ,Red Cab Co., 303 U.S. 283, 58 S.Ct. 586, 82 L.Ed. 845; Hardenbergh v. Ray, 151 U.S. 112, 14 S.Ct. 305, 38 L.Ed. 93. This result is not attributable to any specific statute or to any language in the statutes which confer jurisdiction. It stems rather from the general notion that the sufficiency of jurisdiction should be determined once and for all at the threshold and if found to be present then should continue until final disposition of the action. Moreover, in cases involving the impact of jurisdictional problems on the joinder of claims under Rule 18 it has been held that jurisdiction of the ancillary claim survives the final disposition of the main claim. American Fidelity & Casualty Co. v. Owensboro Milling Co.,supra; Lindquist v. Dilkes, 3 Cir., 127 F.2d 21. In principle, the same rule would seem to be applicable to third-party claims which under Rule 14 must rest on the same transaction or set of facts as the main claim and thus fall within the 'first category' described in Hurn v. Oursler, supra, 289 U.S. at page 246, 53 S.Ct. at page 590.
 
 
 9
 Considerations of policy, as well as the foregoing analogies, accord with our conclusion. If the main claim and the third-party claim are tried together and a decision or a settlement in favor of the plaintiff is announced on the main claim in advance of decision of the third-party claim, to hold that the determination of the main claim ousted the court of jurisdiction over the ancillary claim would in many cases entail a serious waste of effort by both the judge and the litigants. The natural tendency would be to discourage settlements. And the same considerations, though perhaps to a lesser degree, would tend to discourage adjudications on motions and settlements in advance of trial. Confusion would result from such doctrine not only as to the timing but also as to the nature of the event causing loss of the ancillary jurisdiction. If the jurisdictional loss were held not to flow from a settlement of the main claim after trial, can it consistently be held that a settlement thereof at some pre-trial stage will operate to terminate jurisdiction over the third-party claim? Is an out-of-court agreement of settlement an operative jurisdictional factor, or must the agreement be translated into a judicial order to dismiss the claim as moot or to enforce the settlement? Not infrequently, if ancillary jurisdiction were thus subject to defeasance, the third-party claim might be time-barred although, to be sure, that seems not to be an immediate hazard in this case. In short, a rule that ancillary jurisdiction of a third-party claim terminates on a determination of the main claim will seriously impair the utility of the Rule, breed confusion and generate many sterile jurisdictional disputes.
 
 
 10
 We find no authority in conflict with our holding. It is true that there are a number of cases holding that a court, just as it has discretion under Rule 14 to implead a third-party, may in its discretion dismiss the third-party complaint. In some cases the discretion to dismiss has been exercised. Duke v. Reconstruction Finance Corp., 4 Cir., 209 F.2d 204;[4] State of Maryland to Use and Benefit of Wood v. Robinson, D.C.D.Md., 74 F.Supp. 279, 281-282; E.K. Carey Drilling Co. v. Murphy, D.C.D.Colo., 113 F.Supp. 226. In other cases, the court in the exercise of its discretion has retained jurisdiction. Oakes v. Graham Towing Co., D.C.E.D.Pa., 135 F.Supp. 485.[5] But this appeal involves no question as to such discretionary power in a trial court. No motion to dismiss was made below and the judge, instead of entering a discretionary dismissal, proceeded to try the third-party claim. We think the original ancillary jurisdiction survived.
 
 
 11
 The merits of the appeal present little difficulty. The plaintiff's intestate, a freight brakeman, was killed by being knocked off the side of a freight car which the Railroad was moving into a sidetrack which served the Lumber Company yard. The sidetrack was the subject matter of a contract between the Railroad and Lumber Company which provided that the .lumber Company should 'not erect or allow to be erected' any fixture nearer than eight feet from the center of the track. Notwithstanding, the Lumber Company had erected a gatepost which was only about seven feet from the center of the track and it was this post by which, several years subsequent to its erection, the intestate, on the moving freight car, had been knocked to his death. Under the sidetrack agreement the Railroad had the right to relocate the post at the Lumber Company's expense, but although it had inspected the sidetrack monthly for years and had used it daily for the transportation of freight, it had acquiesced in the location of the gatepost without complaint to the Lumber Company. The agreement, in a standard form, contained provisions for indemnity and contribution set forth in the margin.[6]
 
 
 12
 The judge below found that the accident had been caused by the 'concurring negligence of both parties' to the sidetrack agreement and hence was subject to a provision therein that a loss so caused 'shall be borne equally by the Industry (Lumber Company) and the Railroad Company.' This finding reasonably followed from the underlying facts as stipulated. And as the judge observed in the opinion below, his conclusion was in accord with the recent opinion of this court in Wanser v. Long Island Railroad Co., 2 Cir., 238 F.2d 467, in which we construed and applied the identical provisions for indemnity and contribution in another sidetrack agreement of this same appellant. The only differences of fact in the case before us are not such as to lead to a different result. The Railroad was negligent in moving the car in which the intestate was riding past the post and negligent in not earlier having taken steps to remove the post or cause its relocation. And the Lumber Company was negligent in erecting the post too close for safety and thereafter in maintaining it for years in that proscribed location. Surely, the conclusion of concurring negligence was proper.
 
 
 13
 As also indicated in the Wanser opinion, on a finding of concurring negligence a proper construction of the agreement requires that the loss be equally borne. The appellant, invoking New York law, insists that it is entitled to complete indemnification because, it asserts, its negligence was passive; the appellee's active. We think, however, that when the parties in clear and unequivocal language have called for an even division of a loss resulting from concurrent negligence, they are bound thereby and may not invoke law which, absent any agreement, would call for complete indemnity. This conclusion also is implicit in the Wanser opinion. But were it otherwise, we could not view that Railroad's conduct in pushing the car ridden by the intestate past the post and its long-continued failure to cause a relocation of the post as negligence less active than that of the Lumber Company. This, too, is implicit in Wanser.
 
 
 14
 Lastly, the appellant insists that Deep Vein Coal Co. v. Chicago & E.I. Ry. Co., 7 Cir., 71 F.2d 963, and other cases which were distinguished in the Wanser opinion are applicable to this case. We disagree. The sidetrack agreement in the Deep Vein case, though containing similar phases, was vitally different in its textual structure: it specially called for complete indemnification for losses growing out of the location of structures in violation of the agreement. That was not the agreement here. And the other cases cited and distinguished in Wanser we think distinguishable also from the case before us.
 
 
 15
 Affirmed.
 
 
 16
 LUMBARD, Circuit Judge (dissenting).
 
 
 17
 I would reverse the judgment of the district court and remand with directions to dismiss the third-party complaint because the district court at the outset lacked jurisdiction over the impleaded state claim.[1] My colleagues fail to recognize that the invocation of ancillary power by a federal court cannot be justified on the ground that it serves the convenience of the litigants. Ancillary jurisdiction over an impleaded claim must rest upon the need to avoid the substantial likelihood of prejudice to a federal litigant which may flow from his being compelled to relitigate in a state court facts which have been once determined in a federal court; but no such likelihood exists in this case.
 
 
 18
 Under the applicable state law the facts upon which the Railroad's federal liability to the plaintiff rests cannot be relitigated in a subsequent action held in a state court to determine whether both the Railroad and the Lumber Company are responsible for any or all of the $30,000 settlement under the provisions of the indemnity agreement or whether one of them must bear the full loss. Since it therefore appears that no prejudice could have resulted from the denial of ancillary jurisdiction, it was error for the district court to retain jurisdiction over the indemnity claim, however convenient it may have been for the litigants to try the state claim in a federal court.
 
 
 19
 The exercise of federal jurisdiction over a state claim, without statutory authorization, requires the use of the court's ancillary power to extend federal jurisdiction to its constitutional limits. Hart and Weschler, The federal Courts and the Federal System (1953) p. 804. The invocation of such extrastatutory power cannot turn on the mere exercise of discretion, as would be the case if the litigants' convenience were the test, but must be justified by a compelling and definable federal interest. There is an undoubted federal interest, for example, in the exercise of ancillary power to protect one who, because he is required to litigate a claim in a federal court, may be compelled to reestablish in a state court the facts upon which his federal liability rested and thus may be subject to the hazard of inconsistent verdicts. Walmac Co. v. Isaacs, 1 Cir., 1955, 220 F.2d 108, 113-114.[2] In Hurn v. Oursler, 1933, 289 U.S. 238, 53 S.Ct. 586, 77 L.Ed. 1148, the Supreme Court held that it was appropriate to exercise ancillary jurisdiction over a state claim in the absence of diversity if it concerned substantially the same set of facts as the federal claim, not merely to achieve economy of effort but also to avoid the possibility of prejudice to a federal litigant arising from the problems of res judicata and finality of judgment that would be posed should the federal court decline jurisdiction over the pendent state claim. See, Musher Foundation, Inc. v. Alba Trading Co. Inc., 2 Cir., 1942, 127 F.2d 9, 11 (dissenting opinion of Judge Clark).
 
 
 20
 Here Judge HINCKS, in my view misconstruing the rationale of Hurn v. Oursler, maintains that merely because the thrid-party dispute grows out of the 'same core of facts' as the federal claim, a federal court may exercise ancillary jurisdiction over both disputes. But the application of the principle of Hurn v. Oursler depends not on the mere identity of facts that may happen to underlie both a federal and state claim, but on the necessity to prevent a federal litigant from being subjected to the risk of inconsistent verdicts or other prejudice which may stem from his being compelled to prove the same facts twice. As a consequence, Judge HINCKS fails to inquire into whether the railroad would be prejudiced by being required to reestablish the facts on which its federal liability is based in an action on the indemnity contract in a state court.
 
 
 21
 By its motion to implead the third-party defendant, the Railroad seeks to protect itself from the hazards to relitigation. The question the district court should have asked in passing on the motion was whether the Railroad, the defendant in the main action, would be subject to the risk of substantial injury if its motion were denied. Had this question been asked in this case it would have appeared, on the inspection of New York law which governs the state indemnity claim, that none of the facts relevant to the establishment of the federal claim could be relitigated in a state court. Under the law of New York, although the indemnitor does not expressly stipulate in the indemnity contract to be bound by a recovery against the indemnitee in an action to which he is not a party, the indemnitee may make such a recovery conclusive against the indemnitor by giving him notice of the pending action and an opportunity to defend against it. Culver Contracting Corp. v. Humphrey, 1935, 268 N.Y. 26, 41, 196 N.E. 627; MacArthur Brothers Co. v. Kerr, 1915, 213 N.Y. 360, 364, 107 N.E. 572. Cf. Sears, Roebuck & Co. v. 9 Ave. 31 Street Corp., 1937, 274 N.Y. 388, 407-408, 9 N.E.2d 20. Once such notice was given to the Lumber Company, and subsequent federal judgment that the Railroad breached its non-delegable duty under the Federal Employers Liability Act to provide a safe place for plaintiff's intestate to work would be conclusive against the Lumber Company.[3]
 
 
 22
 It is apparent from the face of plaintiff's complaint that proof of her F.E.L.A. claim would turn on whether the gatepost was located too close to the track along which plaintiff's intestate was riding at the time he collided with the post and was killed. To establish the Railroad's liability, the plaintiff would neither be required to prove, nor would it have any interest in proving, whether it was the Railroad or the Lumber Company which was primarily responsible for the location of the gatepost, or whether both were equally at fault. In a subsequent action in the state court on the indemnity contract, the only issue the Lumber Company could litigate would be whether the liability already established against the Railroad in the federal suit was one against which it had indemnified the Railroad. MacArthur Brothers Co. v. Kerr, supra, 213 N.Y. 364, 107 N.E. 573. Thus, any state court action for indemnity would be limited to the issue which would not be determined in the federal action, namely whether the location of the gatepost was the joint fault of both companies or the sole responsibility of either and any defenses on the indemnity contract that the Lumber Company might be able to assert. There is no risk, therefore, that if the impleaded claim were tried in a state court that any of the facts relevant to proof of the federal claim would be relitigated. It should thus be apparent that, because of its indemnity contract and the New York law regarding the vouching in of an indemnitor, no prejudice to the defendant Railroad, which seeks the impleader, can result from the denial of jurisdiction over the indemnity claim.
 
 
 23
 Of course, if, under the indemnity contract as construed by New York law, there was a substantial risk that the refusal to hear the indemnity claim in a federal court would prejudice the defendant, the exercise of ancillary power would be warranted. But in this case, in support of its motion to implead the Lumber Company, the Railroad can only plead a very different and lesser interest, its own convenience in being able to litigate all its rights in this case in a single forum. Weighted against the cardinal principle that the federal jurisdiction is limited by the Constitution and Congressional enactment, the convenience of the Railroad is an insufficient interest to justify the exercise of a federal court's ancillary powers. See Frind v. Middle Atlantic Transportation Co., 2 Cir., 1946, 153 F.2d 778, 779; Note Multiparty Litigation in the Federal Courts, 71 Harv.L.Rev. 874, 906, 911, 976, 992-993 (1958). See also 4 Moore's Federal Practice 136, 140, 145-46, discussed in fn. 3 supra.
 
 
 24
 For these reasons, I think that my colleagues erroneously treat the assumption of jurisdiction as a matter of discretion turning on the convenience that may be achieved. It seems to me most unfortunate that the basic rationale of ancillary jurisdiction is thus obscured.
 
 
 25
 My colleagues have reached their result in order to accomplish what may well be a desirable objective. In view of the crowded calendars in many state and federal courts, the demand to ease the litigation burden of the parties and the need to conserve judicial time, there is undoubtedly much to be said for trying these two actions together. But the real question and the source of this controversy is whether these interests are sufficient to justify the extension of federal jurisdiction accomplished by my brethren without statutory authorization.
 
 
 26
 The assumption of federal jurisdiction over an impleaded state claim raises a serious question as to the constitutional scope of the federal judicial power, and the interest of convenience which is asserted here in support of jurisdiction is insufficient to justify our reaching such a problem. Therefore it seems to me that it is for Congress to take the step of extending federal jurisdiction to take account of the litigants' or the court's convenience.
 
 
 27
 If the district court dismissed the third-party complaint there would still be ample time for the Railroad to bring its indemnity action in the New York courts as the liability of the Lumber Company did not arise until the Railroad was compelled to pay the plaintiff and hence the New York six year statute of limitations for actions on a contract has not run.[4]
 
 
 28
 Accordingly, I would reverse the judgment of the district court and remand with instructions to dismiss the third-party complaint for lack of jurisdiction.
 
 
 
 [1]
 This same question was involved in Wanser v. Long Island Railroad Co., 2 Cir., 238 F.2d 467, certiorari denied Long Island R. Co. v. Central Islip Co-op. G.L.F. Service, 353 U.S. 911, 77 S.Ct. 668, 1 L.Ed.2d 665 in which this court implicitly gave the question an affirmative answer without mention of the jurisdictional point
 
 
 [2]
 A provision in the rule for impleading a third party who 'is or may be liable to * * * the plaintiff' as well as the third-party plaintiff was eliminated by amendment made in 1946, effective in 1948
 
 
 [3]
 In Dewey v. West Fairmont Gas Coal Co., 123 U.S. 329, 8 S.Ct. 148, 31 L.Ed. 179, long before the emergence of the Federal Rules, it was so held
 
 
 [4]
 We think it implicit in the rationale of this opinion (1) that the court had ancillary jurisdiction of the third-party claim even though independent jurisdictional grounds were absent and (2) that but for the discretionary dismissal the ancillary jurisdiction of the third-party claim would have survived the adjudication of the main claim
 
 
 [5]
 This case much resembles that now on appeal in that after a settlement of the main claim before trial the court proceeded to adjudicate the third-party claim
 
 
 [6]
 'The Industry also agrees to indemnify and hold harmless the Rail Road Company for loss, damage, or injury from any act or omission of the Industry, its employees or agents, or any one not a party to this agreement using said side track and switch connection, their employees or agents, to the person or property of the parties hereto and their employees, and to the person or property of any other person or corporation, while on or about said side track and switch connection; and if any claim or liability other than from fire shall arise from the joint or concurring negligence of both parties hereto, or the joint or concurring negligence of any one not a party to this agreement using said side track and switch connection and the Rail Road Company, it shall be borne equally by the Industry and the Rail Road Company.'
 
 
 [1]
 In Wanser v. Long Island Railroad Co., 2 Cir., 1956, 238 F.2d 467, the question of ancillary jurisdiction over an impleaded state claim was never even mentioned in the court's opinion. In Bernstein v. N. V. Nederlandsche, Amerikaansche Stoomvaart-Maatschappij, 2 Cir., 1949, 173 F.2d 71, 78, we sustained jurisdiction over the impleaded claim upon the basis of diversity of citizenship. The court's statement that 'diverse citizenship between the original plaintiff and the third-party defendant is not necessary to support jurisdiction based upon diverse citizenship between the plaintiff and the main defendant' cannot be given the meaning Judge HINCKS apparently attributes to it. The citation of Sheppard v. Atlantic States Gas Co. of Pennsylvania, 3 Cir., 1948, 167 F.2d 841, 845 and Friend v. Middle Atlantic Transportation Co., 2 Cir., 1946, 153 F.2d 778, 779, 780, following this sentence make it plain that we merely held that in a case in which jurisdiction over the main claim is founded on diversity, the lack of diverse citizenship between the original plaintiff and the third-party defendant will not destroy the court's jurisdiction of the main claim if the plaintiff asserts no claim against the third-party defendant. Lesnik v. Public Industrials Corporation, 2 Cir., 1944, 144 F.2d 968 involved the very different question of ancillary jurisdiction over a compulsory counterclaim. See footnote 2, infra. None of these cases can be treated as expressing or even indicating implicitly this circuit's views on the questions whether a federal court may exercise ancillary jurisdiction over an impleaded state claim
 
 
 [2]
 Another example of such an interest is reflected in the compulsory counterclaim cases erroneously relied on by Judge HINCKS. Those cases turn on the fact that if ancillary jurisdiction over a compulsory counterclaim were declined, the defendant would either be foreclosed from presenting his state claim in any court because of the application of res judicata or the federal adjudication would be deprived of the quality of finality because in order to avoid the harshness of applying res judicata in such situation, a state court would permit the relitigation of the facts on which the federal judgment is based. See 71 Harv.L.Rev. 874, 969 (1958). In order to avoid either of these results, both of which would impair the quality of federal justice, a federal court may be justified in exercising its ancillary powers. For still another example, see Dugas v. American Surety Co., 1937, 300 U.S. 414, 428, 57 S.Ct. 515, 81 L.Ed. 720
 
 
 [3]
 If the railroad gives the Lumber Company notice of the plaintiff's pending suit, the Lumber Company would be entitled to intervene of right in the defense of the F.E.L.A. claim if the Railroad did not adequately represent its interests. Rule 24(a)(2), Federal Rules of Civil Procedure. No independent basis of jurisdiction would be necessary to sustain the Lumber Company's intervention in the F.E.L.A. action because the court's jurisdiction would rest on the federal nature of the plaintiff's claim rather than the diverse citizenship of the litigants. The question posed by the Lumber Company's intervention would be one of the sufficiency of its interest to participate in the federal action rather than of jurisdiction. Note, however, that even should jurisdiction of the main claim be founded upon diversity of citizenship, an independent basis of jurisdiction would not be required to sustain intervention in the defense of the main claim by an indemnitor of the same citizenship as the plaintiff. In such a case, since the indemnitor intervenes of right, the exercise of ancillary jurisdiction would be appropriate in order to avoid the risk that he would otherwise be bound by a judgment in an action to which he was not a party. However, an applicant for permissive intervention would have to demonstrate an independent basis of federal jurisdiction. Thus it is apparent that the risk of injury is sufficient to justify jurisdiction over a non-diverse intervenor of right but that the interest of convenience is not sufficient to sustain jurisdiction over a permissive intervenor in the absence of an independent basis of jurisdiction. See 4 Moore's Federal Practice 136, 140, 145-46; 71 Harv.L.Rev. 874, 906 (1958). The interest of the potential intervenor, the Lumber Company, though sufficient to justify its participation to protect itself from injury cannot be urged by the defendant Railroad in support of its motion to implead, as the absence of the intervenor will not result in harm to the Railroad
 
 
 [4]
 New York Civil Practice Act, 48, subdivision 1